**Gerald McMILLAN and Ernie Nycz, Appellants,**

**v.**

**COMPUTER TRANSLATION SYSTEMS & SUPPORT, INC., Appellee.**

**In re Gerald McMillan and Ernie Nycz.**

**No. 05-01-00363-CV.**

Court of Appeals of Texas, Dallas.

Dec. 19, 2001.

Wade Caven Crosnoe, Thompson, Coe, Cousins & Irons, L.L.P., Dallas, for Appellants.

John Allen Chalk, Whitaker, Chalk, Swindle & Sawyer, L.L.P., Fort Worth, William Brent Shellhorse, Dallas, for Appellee.

Before Justices WHITTINGTON, FARRIS,[1] and ROSENBERG.[2]

## OPINION

Opinion by Justice ROSENBERG (Assigned).

In these consolidated proceedings, Gerald McMillan and Ernie Nycz bring a petition for writ of mandamus and an interlocutory appeal complaining of the trial court's order denying their motion to compel arbitration with Computer Translations Systems & Support, Inc. (CTSS) under the Federal Arbitration Act (FAA) and the Texas General Arbitration Act (Texas Act). *See* 9 U.S.C.A. §§ 1–16 (West 1999); Tex. Civ. Prac. & Rem.Code Ann. §§ 171.001–.098 (Vernon Supp.2002).[3] We conditionally

1. The Honorable David F. Farris, Retired Justice, Second District Court of Appeals, Fort Worth, Texas, sitting by assignment.

2. The Honorable Barbara Rosenberg, Former Justice, Fifth District Court of Appeals, Dallas, Texas, sitting by assignment.

3. Appellants filed two proceedings in this

grant the petition for writ of mandamus. Having conditionally granted the writ under the FAA, we need not address the interlocutory appeal under the Texas Act.

## FACTUAL AND PROCEDURAL BACKGROUND

CTSS developed and marketed phonic-based transcription technologies. Jerrold P. Lefler was president of CTSS. After a funding contract with Electronic Data Systems Corporation (EDS) fell through, CTSS, Lefler, and others began negotiations with another investor, ErgoBilt, Inc. A dispute resulted in a Mutual Release and Settlement Agreement among CTSS, Lefler, Merle Moore, Lawrence West Melquiond, ErgoBilt, and ErgoFon'iks, Inc. (a subsidiary of ErgoBilt). The settlement agreement provided for the formation of a new corporate entity that was later named Decipher Technologies, Inc. (Decipher), owned equally by CTSS and ErgoFon'iks. The settlement agreement obligated ErgoFon'iks to transfer its intellectual property rights to Decipher, establish a credit line with the First Commercial Bank of Seguin, make certain parts available to Decipher, and repair certain equipment. There were to be five directors, two chosen by ErgoBilt, two chosen by CTSS, and one director agreed upon by the other four directors. The settlement agreement also provided that a portion of the proceeds from a suit involving CTSS, Lefler, Moore, and West against EDS would be paid to ErgoFon'iks. The settlement agreement also had a mediation and arbitration clause that provided:

> Any controversy or claim arising out of or relating to this Agreement or the breach thereof[ ] shall be settled first by non-binding mediation.... If said mediation is not successful ... then by arbitration....

ErgoFon'iks brought suit in the 160th Judicial District Court against CTSS, West, and Lefler concerning the division of the proceeds from the EDS suit. CTSS, West, and Lefler brought a plea in abatement to enforce the arbitration terms of the settlement agreement, which the trial court granted on November 1, 2000.

On the day the trial court signed the abatement order, CTSS, as a shareholder in Decipher, brought this action against McMillan and Nycz in the 191st Judicial District Court. The causes of action alleged were, first, breach of fiduciary duties by taking employment with a competitor, failing to attend board of directors meetings, and failing to exercise reasonable business judgment and, second, tortious interference with prospective business relations by harming Decipher's business reputation and interfering with the delivery of repair parts, financing efforts, and a bank auction of parts. McMillan and Nycz moved that the case be transferred to the 160th Judicial District Court. The motion was granted. They then moved for a plea in abatement to enforce the arbitration provisions of the settlement agreement. The trial court denied the motion, and this

Court: (1) a petition for writ of mandamus pursuant to rule of appellate procedure 52, and (2) an accelerated appeal of an interlocutory order pursuant to section 171.098 of the civil practice and remedies code and rule of appellate procedure 28. Tex. Civ Prac. & Rem. Code Ann. § 171.098 (Vernon Supp.2002); Tex. Rs.App. P. 28, 52. This is the appropriate procedure. When an appellant alleges entitlement to arbitration under both the FAA and the Texas Act, to successfully appeal an order denying arbitration, he must "pursue parallel proceedings—an interlocutory appeal of the trial court's denial under the Texas Act, and a writ of mandamus from the denial under the Federal Act." *Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 272 (Tex.1992) (orig. proceeding). The two proceedings were consolidated.

interlocutory appeal of the denial of arbitration under the Texas Act and petition for writ of mandamus on the denial of arbitration under the FAA followed.

The contractual arbitration clause in this case does not specifically invoke either the FAA or the Texas Act, and the trial court made no ruling on which Act applies. The Texas Act and the FAA provide alternative procedural vehicles for relief. *In re Educ. Mgmt. Corp., Inc.*, 14 S.W.3d 418, 425 (Tex.App.—Houston [14th Dist.] 2000, orig. proceeding). The FAA displaces state law only to the extent the state law is in conflict with the FAA's purpose of enforcing the parties' contractual obligation to arbitrate. *Volt Info. Sciences Inc. v. Bd. of Trustees*, 489 U.S. 468, 477–78, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989); *In re H.E. Butt Grocery Co.*, 17 S.W.3d 360, 378 (Tex.App.—Houston [14th Dist.] 2000, orig. proceeding). Thus, if the arbitration clause is enforceable under the FAA, then an analysis of enforceability under the Texas Act would be unnecessary. *See, e.g., In re Anaheim Angels Baseball Club, Inc.*, 993 S.W.2d 875, 877 n. 1 (Tex.App.—El Paso 1999, orig. proceeding [leave denied] ). Accordingly, we first review the petition for writ of mandamus for enforcement of the arbitration provision under the FAA before considering the interlocutory appeal for enforcement under the Texas Act.

## THE MANDAMUS

A party denied the right to arbitrate under the FAA by a state court has no adequate remedy by appeal and is entitled to mandamus relief to correct a clear abuse of discretion. *In re L & L Kempwood Assocs., L.P.*, 9 S.W.3d 125, 128 (Tex. 1999) (orig. proceeding). Thus, we must determine whether the petitioners established their right to arbitration under the FAA.

A party seeking to compel arbitration by mandamus must first establish the existence of an arbitration agreement subject to the FAA. *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999) (orig. proceeding).[4] Once the movant establishes an agreement, the court must then determine whether the arbitration agreement covers the nonmovant's claims. *Cantella & Co. v. Goodwin*, 924 S.W.2d 943, 944 (Tex.1996) (orig. proceeding). Because federal policies favor arbitration, a presumption exists favoring agreements to arbitrate under the FAA, and courts must resolve any doubts about an arbitration agreement's scope in favor of arbitration. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex.2001) (orig. proceeding). If the arbitration agreement encompasses the claims and the party opposing arbitration has failed to prove its defenses, the trial court has no discretion but to compel arbitration and stay its own proceedings. *Id.* at 753–54.

McMillan and Nycz are not individual signatories to the settlement agreement. Nevertheless, in an issue,[5] they claim the trial court's refusal to compel arbitration is an abuse of discretion because, first, they are agents of the signatories and, second,

4. A clause in the settlement agreement prohibits competition by the parties with Decipher by engaging in any business that manufactures or sells competitive products "anywhere in the United States." Thus, the agreement meets the FAA's requirement that the dispute concern a transaction that affects interstate commerce. *See Jack B. Anglin Co.*, 842 S.W.2d at 269–70 (citing 9 U.S.C.A. §§ 1, 2).

5. Appellants also present as an issue that there is no adequate remedy at law for the refusal to order arbitration under the FAA. Mandamus is the proper remedy for this refusal. *Jack B. Anglin Co.*, 842 S.W.2d at 272.

equitable estoppel entitles them to the benefit of the arbitration provision.

Under their first theory, they claim that, because McMillan was chairman of the boards of ErgoFon'iks and ErgoBilt and Nycz was ErgoFon'iks's and ErgoBilt's corporate counsel, they are agents of the signatories of the settlement agreement and entitled to invoke the arbitration clause of the agreement. Nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles. *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187 (9th Cir.1986). When the principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are covered by that agreement. *Pritzker v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 7 F.3d 1110, 1121 (3rd Cir.1993); *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281–82 (6th Cir.1990). In federal cases in which nonsignatory defendants have received the benefit of an arbitration agreement, the plaintiffs sued individuals who were working on behalf of the signatory principals on matters covered by the agreements. *See Pritzker*, 7 F.3d at 1112 (financial consultant employed to give investment advice under cash management agreement with brokerage firm); *Arnold*, 920 F.2d at 1280 (officers of corporation or members of board of directors acting as agents of signatory company that signed stock purchase agreement); *Letizia*, 802 F.2d at 1186 (account executives employed to trade securities pursuant to brokerage agreement with firm). These courts reasoned that all the individuals' allegedly wrongful acts related to their behavior as agents of the signatory company, and those acts were within the scope of the claims covered by the arbitration provisions for which the principal signatory company would be liable. *See Pritzker*, 7 F.3d at 1121–22; *Arnold*, 920 F.2d at 1281–82; *Letizia*, 802 F.2d at 1188. And, the courts reasoned, extending the scope of an arbitration provision to an agent of the party who signed the agreement furthers the federal policy of favoring arbitration and the parties' intent to provide a single forum to resolve disputes arising under an agreement. *See Pritzker*, 7 F.3d at 1122; *Arnold*, 920 F.2d at 1282; *Letizia*, 802 F.2d at 1188.

Here, it is undisputed that McMillan and Nycz are employees or agents of signatories to the agreement, ErgoFon'iks and ErgoBilt. Thus, the issue is whether the claims asserted by CTSS are within the scope of the claims covered by the arbitration provisions. The arbitration provision provides that it applies to any controversy or claim arising out of the agreement. McMillan and Nycz argue that CTSS's action concerns duties imposed by the settlement agreement. As evidence that this action involves breaches of the settlement agreement, they assert the counterclaims against ErgoFon'iks and ErgoBilt, covered by the agreement, are the same claims being brought against them as directors of Decipher. For example, in the original suit, CTSS alleged in the counterclaim, among other things, that ErgoFon'iks and ErgoBilt:

- failed to support the First Commercial Bank of Seguin's financing, in breach of paragraph 6 of the settlement agreement;
- failed to provide machine parts, in breach of paragraph 8; and
- failed to protect Decipher's goodwill.

In fact, these claims were clearly covered by the arbitration provision in the agreement. Paragraph 6 provided that ErgoFon'iks and ErgoBilt would be responsible for the credit line with First Commercial Bank of Seguin. Paragraph 8 provided that ErgoFon'iks would use its best efforts to help Decipher buy any parts or invento-

ry. Paragraph 26 provided that no party to the agreement was to make false, misleading, or disparaging statements about Decipher.

Similarly, CTSS's claims against McMillan and Nycz involved these same duties that the settlement agreement placed upon ErgoFon'iks and ErgoBilt. For example, CTSS claimed that McMillan and Nycz:

- interfered with contractual relations with First Commercial Bank of Seguin and Comerica, as contemplated by the settlement agreement;
- failed to authorize and tortiously interfered with delivery of reasonable amounts of repair parts; and
- interfered with Decipher's business opportunities and contracts, harming Decipher's business reputation.

Although CTSS argues that its petition is based solely on McMillan's and Nycz's duties as directors of Decipher, these claims also involve the duties imposed on ErgoFon'iks and ErgoBilt by the settlement agreement regarding the purposes for which Decipher was established. Further, these duties imposed on ErgoFon'iks and ErgoBilt by the settlement agreement could only be breached by their agents McMillan and Nycz, whether or not they also acted as directors of Decipher. *See, e.g., Arnold,* 920 F.2d at 1281. Because ErgoFon'iks and ErgoBilt could be held liable for these same claims, we conclude that McMillan and Nycz were entitled to the benefit of the arbitration agreement for these claims.

CTSS also alleged that, first, McMillan and Nycz breached their fiduciary duty by failing to attend board meetings, vote on corporate matters for Decipher, and exercise reasonable business judgment, and, second, McMillan breached his fiduciary duty by taking employment with a Decipher competitor. In CTSS's previous counterclaim, it alleged that ErgoFon'iks and ErgoBilt had breached these same duties and referred to paragraphs 5 and 26 of the agreement, which provided for the creation and organization of Decipher as well as loyalty among each other and Decipher. Although these claims do not arise from the directors' activities specifically provided in the agreement, these claims do arise from the agreement's framework for the management of Decipher, that is, its creation, choice of directors, and independent management requirement. Further, in the other action, CTSS attempts to hold ErgoFon'iks and ErgoBilt responsible for these very acts of McMillan and Nycz by reason of the agreement. Under their second theory, McMillan and Nycz argue that CTSS is equitably estopped from opposing arbitration in this factual situation.

Equitable estoppel allows a nonsignatory to compel arbitration in two circumstances. *See Grigson v. Creative Artists Agency, L.L.C.,* 210 F.3d 524, 527 (5th Cir.) (citing *MS Dealer Serv. Corp. v. Franklin,* 177 F.3d 942, 947 (11th Cir. 1999)), *cert. denied,* 531 U.S. 1013, 121 S.Ct. 570, 148 L.Ed.2d 488 (2000). First, "[a]pplication of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Id.* Second, equitable estoppel may be applied if the nature of the underlying claims requires the signatory to rely on the terms of the written agreement containing the arbitration provision in asserting its claims against the nonsignatory. *Id.; see ANCO Ins. Servs. of Houston, Inc. v. Romero,* 27 S.W.3d 1, 6 (Tex.App.—San Antonio 2000, pet. denied).

First, CTSS's breach of fiduciary duty claims against McMillan and Nycz are identical to those claims against ErgoFon'iks and ErgoBilt and arise from the

same breach of the settlement agreement, involve the same participants and conduct, and occurred within the same time. Therefore, these claims raise allegations of substantially interdependent and concerted misconduct by both the nonsignatory individuals and the signatory corporations. *See Am. Heritage Life Ins. Co. v. Harmon,* 147 F.Supp.2d 511, 514–15 (N.D.Miss. 2001). Simply bringing a separate action against McMillan and Nycz in related claims after arbitration has been ordered in the previous case will not avoid the arbitration provision. *See Grigson,* 210 F.3d at 530 (party cannot bypass arbitration provision by dismissing suit against party to agreement and then filing new suit involving same subject against nonparties to agreement).

Next, CTSS refers to the settlement agreement in the factual background of its original petition as the basis of the operation of Decipher. CTSS did not articulate a cause of action without reference to the terms of the settlement agreement. Accordingly, CTSS relied on the settlement agreement to assert its claims against McMillan and Nycz. *See id.* at 527; *see also Valero Energy Corp. v. Teco Pipeline Co.,* 2 S.W.3d 576, 593 (Tex.App.—Houston [14th Dist.] 1999, no pet.) (equitable estoppel applies when party must rely on terms of written agreement in asserting its claims). Therefore, we conclude that both tests for equitable estoppel apply here and McMillan and Nycz are entitled to invoke the arbitration provision of the agreement.

Because McMillan and Nycz are entitled to arbitration as agents of signatories and under the doctrine of equitable estoppel, we conclude that the district court clearly abused its discretion in ordering that the parties' disputes be resolved by litigation and not by arbitration. *See In re L & L Kempwood Assocs., L.P.,* 9 S.W.3d at 128. Accordingly, we conditionally grant mandamus relief without addressing the merits of the interlocutory appeal pursuant to the Texas Act. We dismiss that appeal as moot. The trial court is ordered to vacate its orders denying both McMillan and Nycz's Plea in Abatement—Arbitration and their Motion for Reconsideration, to issue an order compelling arbitration on all claims, and to stay all proceedings pending arbitration. In addition, the trial court is ordered to file with this Court within thirty days a certified copy of its order in compliance with this Court's order. Should the trial court fail to comply with these directions, the clerk is instructed to issue the writ.