Opinion issued October 24, 2002











 





In The

Court of Appeals

For The

First District of Texas






NO. 01-02-00148-CV

____________



IN RE EGL EAGLE GLOBAL LOGISTICS, L.P.

F/K/A EAGLE USA AIRFREIGHT, INC., Relator







Original Proceeding on Petition for Writ of Mandamus (1)






O P I N I O N

 By petition for writ of mandamus, relator, EGL Eagle Global Logistics, L.P.
f/k/a Eagle USA Airfreight, Inc. ("Eagle"), challenges the trial court's January 11,
2002 order compelling Eagle to arbitrate its claims brought against the real parties in
interest and defendants below, Frederick Lalumandier, Steven Lalumandier, Randy
Cockrell, Leann Wilmot, Expedited Logistics and Freight Services, Ltd. ("ELFS"),
and ELFS Management, Inc. (collectively, "the ELFS entities").

 We deny the petition for writ of mandamus.

Facts and Procedural Background


 Eagle is a freight forwarding company located in Houston. David Flake is a
former Eagle salesperson and one of the real parties in interest here. In May 1999,
Flake, while employed by Eagle, and a representative of Eagle signed a document
entitled "Employment Agreement," which contains the following arbitration clause:

 The Company and Employee agree that in the event of any legal dispute
between the parties concerning this Agreement or legal rights arising
from or relating to the employment relationship between the Company
and Employee, the parties shall submit their dispute to binding
arbitration. . . . The arbitration will be conducted under the authority of
the Federal Arbitration Act.


 In addition, the employment agreement contained provisions prohibiting Flake
from using or disclosing Eagle's "trade secrets" and "confidential information,"
including market, pricing, and cost information, and customer lists and contacts, for
any purposes other than "the exclusive benefit of [Eagle]" both during his
employment with Eagle and "at any time thereafter." The employment agreement
also contained a one-year, non-competition covenant.

 Flake was employed by Eagle until October 2001, when he went to work for
ELFS, one of Eagle's competitors. Shortly thereafter, Eagle sued Flake for breach of
contract, alleging that he had breached the terms of the employment agreement by
improperly disclosing Eagle's trade secrets and confidential information and by
soliciting Eagle's customers. Eagle sought an injunction to prevent Flake from using
or disclosing business information that he had obtained while employed by Eagle and
from soliciting Eagle's customers. The trial court granted the injunction and ordered
Eagle and Flake to arbitrate their dispute in accordance with the provisions of the
employment contract. (2)

 Eagle also named the ELFS entities as defendants, and it alleged claims against
them and Flake jointly for misappropriation and theft of its trade secrets and
confidential information, tortious interference with its existing business relationships,
and civil conspiracy. In response, the ELFS entities filed a motion to compel
arbitration of all of Eagle's claims against them. The trial court subsequently granted
the motion. (3)

Mandamus


 Mandamus is the proper means for seeking review of an order compelling
arbitration under the Federal Arbitration Act ("FAA"). Freis v. Canales, 877 S.W.2d
283, 284 (Tex. 1994). Mandamus will issue only to correct a clear abuse of discretion
or violation of a duty imposed by law when that abuse cannot be remedied by appeal. 
Jack B. Anglin Co., Inc. v. Tipps, 842 S.W.2d 266, 272 (Tex. 1992). A trial court
abuses its discretion when it fails to analyze or apply the law correctly. Walker v.
Packer, 827 S.W.2d 833, 840 (Tex. 1992).

 A presumption exists in favor of agreements to arbitrate under the FAA. 
Prudential Sec., Inc. v. Marshall, 909 S.W.2d 896, 898 (Tex. 1995). However, the
strong federal policy of resolving doubts in favor of arbitration cannot serve to stretch
a contractual clause beyond the scope intended by the parties or to allow modification
of the plain and unambiguous provisions of an agreement. Belmont Constructors,
Inc. v. Lyondell Petrochemical Co., 896 S.W.2d 352, 356 (Tex. App.--Houston [1st
Dist.] 1995, no writ). Although courts may enforce arbitration agreements, a court
may not generally order arbitration in the absence of such an agreement. Freis, 877
S.W.2d at 284; Hou-Scape, Inc. v. Lloyd, 945 S.W.2d 202, 205 (Tex. App.--Houston
[1st Dist.] 1997, orig. proceeding).

Analysis


 The parties do not dispute the existence of a valid arbitration agreement
between Eagle and Flake. Nor do they contest the fact that the ELFS entities were not
signatories to the employment agreement and have no contractual right to arbitration.

 The ELFS entities argue that they are entitled to compel arbitration under the
theory of equitable estoppel because Eagle's claims against them are intertwined with
and dependent upon Eagle's employment agreement with Flake. Equitable estoppel
allows non-signatories to compel arbitration in two circumstances: (1) when the
signatory to the contract containing an arbitration clause raises allegations of
substantially interdependent and concerted misconduct by both the non-signatories
and a signatory or (2) when the nature of the underlying claims requires the signatory
to rely on the terms of the written agreement containing the arbitration clause in
asserting the signatory's claims against the non-signatories. McMillan v. Computer
Translation Sys. & Support, Inc., 66 S.W.3d 477, 482 (Tex. App.--Dallas 2001, no
pet.) (citing Grigson v. Creative Artists Agency, L.L.C., 210 F.3d 524, 527 (5th Cir.),
cert. denied, 531 U.S. 1013, 121 S. Ct. 570 (2000)); Texas Enters., Inc. v. Arnold Oil
Co., 59 S.W.3d 244, 249 (Tex. App.--San Antonio 2001, no pet.); see also Hill v. GE
Power Sys., Inc., 282 F.3d 343, 348 (5th Cir. 2002).

 Eagle first argues that its claims against the ELFS entities do not rely upon an
interpretation of the employment agreement, are not based on the same operative facts
as its claims against Flake, and are not inherently inseparable from its claims against
the ELFS entities. However, in its third amended petition, Eagle alleged a cause of
action for misappropriation and theft of its trade secrets and confidential information
"against all defendants," as follows:

 Since Flake's departure from Eagle and his immediate commencement
of employment with ELFS, and possibly before that time, Lalumandier,
Cockrell, and ELFS have prepared for, assisted, ratified, and benefitted
from Flake's prohibited and unlawful conduct. Specifically, [the ELFS
entities] have utilized and profited from the misappropriation or theft of
Eagle's confidential business information, including customer lists and
contact information. These intentional disclosures or misuses were
wholly unauthorized and constitute breaches of confidence to Eagle's
disadvantage.


(Emphasis added.) In its claim for civil conspiracy, Eagle alleged that the
"[d]efendants . . . secretly conspired, agreed, and endeavored to deprive Eagle of
confidential information, current and prospective business agreements and
advantages, and business goodwill." (Emphasis added.) 

 Moreover, in its third amended petition, Eagle brought its causes of action for
misappropriation and theft of trade secrets and for civil conspiracy jointly "against
all defendants" and alleged concerted, coordinated acts by the real parties in interest. 
Thus, we conclude that, in its pleadings, Eagle raised allegations of "substantially
interdependent and concerted misconduct" by the real parties in interest. See
McMillan, 66 S.W.3d at 482.

 Eagle next contends that, because Flake was not an agent or employee of the
ELFS entities at the time he signed the employment agreement with Eagle, the trial
court erred in applying the theory of equitable estoppel to compel arbitration of
Eagle's claims against the ELFS entities. We disagree. Eagle relies on several cases
in which courts have applied equitable estoppel to compel arbitration in
circumstances involving an agency, employment, or parent/subsidiary relationship
between a signatory and the non-signatory seeking to compel arbitration. See id.
(non-signatories were employees or agents of signatory); In re Nasr, 50 S.W.3d 23,
28 (Tex. App.--Beaumont 2001, orig. proceeding) (individual non-signatory was
president of signatory corporation); In re Educ. Mgmt. Corp., Inc., 14 S.W.2d 418,
424-25 (Tex. App.--Houston [14th Dist.] 2000, orig. proceeding) (non-signatories
were alleged "alter egos" of signatory); Valero Energy Corp. v. Teco Pipeline Co.,
2 S.W.3d 576, 592-93 (Tex. App.--Houston [14th Dist.] 1999, no pet.) (non-signatories were subsidiary, parent, or sister corporations of signatory entities);
Nationwide of Bryan, Inc. v. Dyer, 969 S.W.2d 518, 520 (Tex. App.--Austin 1998,
no pet.) (non-signatory was third-party beneficiary of contract containing arbitration
clause); Merrill Lynch v. Eddings, 838 S.W.2d 874, 879 (Tex. App.--Waco 1992,
writ denied) (non-signatories were settlor and beneficiaries of trust containing
arbitration clause).

 However, none of these cases requires a non-signatory party seeking to compel
arbitration under a theory of equitable estoppel to establish the existence of an
agency, employment, or corporate parent/subsidiary relationship between it and a
signatory to compel arbitration. Rather, such relationships can be a factor to be
considered by a court in determining whether the claims presented by the signatory
party resisting arbitration against a non-signatory are inherently inseparable from its
arbitrable claims brought against another signatory. In re Educ. Mgmt. Corp., Inc.,
14 S.W.2d at 424-25; Valero, 2 S.W.3d at 592-93.

 Finally, Eagle contends that the trial court abused its discretion in applying the
doctrine of equitable estoppel because the ELFS entities came to court with "unclean
hands." As an equitable theory, estoppel is subject to traditional equitable defenses. 
Texas Enters., 59 S.W.3d at 249; ANCO Ins. Servs. of Houston, Inc. v. Romero, 27
S.W.3d 1, 6 (Tex. App.--San Antonio 2000, pet. denied). The defensive doctrine of
"clean hands" requires that one who comes to court seeking equity must come with
clean hands. Texas Enters., 59 S.W.3d at 249; Romero, 27 S.W.3d at 6. As evidence
of unclean hands, Eagle re-argues the claims in its petition, alleging that the ELFS
entities "tortiously interfered with and conspired to induce" Flake to breach the
employment agreement and, therefore, should not be allowed to compel arbitration
under that same agreement. Such allegations do not amount to evidence of unclean
hands and would essentially require this Court to find Eagle's causes of action
meritorious in the absence of any evidentiary hearing or trial.

 Because Eagle's causes of action against Flake and the ELFS entities raised
allegations of "substantially interdependent and concerted misconduct," we hold the
trial court did not abuse its discretion in compelling Eagle, under the theory of
equitable estoppel, to arbitrate its claims alleged against the ELFS entities.

Conclusion


 We deny Eagle's petition for mandamus relief.



 Terry Jennings

 Justice


Panel consists of Justices Nuchia, Jennings, and Radack.


Publish. Tex. R. App. P. 47.
1. The underlying case is styled EGL Eagle Global Logistics L.P. f/k/a Eagle USA
Airfreight, Inc. v. David Flake, Frederick Lalumandier, Randy Cockrell,
Expedited Logistics and Freight Services, Ltd., ELFS Management, Inc.,
Steven Lalumandier, and Leann Wilmot, cause number 2001-51486, in the
127th Judicial District Court of Harris County, Texas, the Hon. Sharolyn
Wood, presiding.
2. Flake unsuccessfully challenged the injunction in Flake v. EGL Eagle Global
Logistics, L.P. f/k/a Eagle USA Airfreight, Inc., No. 14-01-01069-CV (Tex.
App.--Houston [14th Dist.] Sept. 5, 2002, n.w.h.) (not designated for
publication).
3. Real party in interest and defendant below, Steven Lalumandier, was not
served with process until after the trial court signed its January 11, 2002 order. 
However, the parties filed a written agreement making Eagle's claims against
him subject to that order as well. See Tex. R. Civ. P. 11.