In re C–SPAN ENTERTAINMENT,
INC. and Sunil Dharod,
Relators.

and

In re Akin Gump Strauss Hauer &
Feld, LLP., Edward J. Fields, Jr.,
and Spencer B. Young, Relators.

Nos. 05–04–01450–CV, 05–04–01655–CV.

Court of Appeals of Texas,
Dallas.

May 3, 2005.

Paul Bezney, David Wilson Dodge, Dodge, Anderson, Jones, Bezney & Gillman, Dallas, David C. Musslewhite, Fruitvale, for relators, 05-04-01450-CV.

Alan L. Busch, Robert Ruotolo, Gerald Singer & Levick, P.C., Addison, Maurice Ladale Brimmage, Todd B. Baker, Thomas E. Kurth, Haynes & Boone, L.L.P., Dallas, for real party in interest, 05-04-01450-CV.

Alan L. Busch, Robert Ruotolo, Todd Alan Hoodenpyle, Gerald Singer & Levick, P.C., Addison, for relators, 05-04-01655-CV.

Thomas E. Kurth, Haynes & Boone, L.L.P., Dallas, for real party in interest, 05-04-01655-CV.

Maurice Ladale Brimmage, Todd B. Baker, Haynes and Boone, Paul A. Bezney, David Wilson Dodge, Dallas, David C. Musslewhite, Fruitvale, for real party in interest, 05-04-01655-CV.

Before Justices WHITTINGTON, FITZGERALD, and LANG–MIERS.

## OPINION NUNC PRO TUNC

Opinion by Justice FITZGERALD.

The Court's opinion of March 15, 2005 is withdrawn 06-346887, on the Court's own motion, and this is now the opinion of this Court. These companion proceedings involve a related pair of orders from the same cause below. Both orders address the viability of a waiver of a jury trial. Relators C–Span Entertainment, Inc. and Sunil Dharod (collectively "C–Span") contend the trial court abused its discretion by granting the motion to quash C–Span's request for a jury, filed by real party in interest Blockbuster, Inc. Relators Akin Gump Strauss Hauer & Feld, LLP, Edward J. Fields, Jr., and Spencer B. Young (collectively "Akin Gump"), in turn, contend the trial court abused its discretion by denying Akin Gump's motion to quash C–Span's jury demand. Put simply, C–Span demanded a trial by jury below; separately, Blockbuster sought and Akin Gump conditionally sought to rely on a waiver of the right to trial by jury found in certain contracts between Blockbuster and C–Span.[1] For the reasons that follow, we find no abuse of discretion in the trial court's rulings, and we deny the writs.

### BACKGROUND

In 1999, Blockbuster and C–Span negotiated an agreement whereby C–Span would purchase the assets and operations of eleven of Blockbuster's stores in East Texas. Akin Gump represented C–Span in these negotiations. The sale was memorialized by a contract entitled "Asset Sale Agreement," signed by the parties on September 24, 1999. On September 27, 1999, the parties executed Blockbuster's standard form franchise agreements for the eleven stores (the "Standard Franchise Agreements").[2] The Standard Franchise Agreements included the following language:

**COMPANY AND FRANCHISEE AND EACH OWNER BY EXECUTION OF THIS AGREEMENT IRREVOCABLY WAIVE TRIAL BY JURY ON ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER AT LAW OR EQUITY, BROUGHT BY EITHER OF THEM.** (Emphasis in originals.)

The Asset Sale Agreement did not contain a jury waiver.

After the closing of the transaction, disputes arose concerning the accuracy of certain financial information disclosed to C–Span during the negotiations. On June 8, 2001, C–Span filed suit against Blockbuster, asserting both tort and contract

---

**1.** Akin Gump has taken the position before this Court that the fundamental remedy it seeks is the ability to participate in a single trial with the other parties. Accordingly, it seeks to try its portion of the case before the court if Blockbuster is permitted to do so; it seeks to try its case before a jury if Blockbuster is so required.

**2.** The several-day difference in dates marks the weekend's interruption of the closing process.

claims. Eventually, C–Span joined Akin Gump in the same action, alleging malpractice in Akin Gump's representation during negotiation of the Blockbuster deal. Blockbuster counterclaimed against C–Span, and Blockbuster and Akin Gump also lodged cross claims against each other.[3] During the pendency of this litigation, the trial court has entered seven scheduling orders—a significant number of those created by agreement of Blockbuster and C–Span—that included a date for a jury trial setting. At the point in time that this proceeding arose, the parties were set for trial before a jury on October 25, 2004.

On September 3, 2004, the Texas Supreme Court issued its opinion in *In re Prudential*, 148 S.W.3d 124 (Tex.2004). And on September 22, 2004, Blockbuster moved to quash C–Span's jury demand, relying upon the jury-trial waiver contained in the Standard Franchise Agreements and the *Prudential* opinion's pronouncement that pre-litigation jury waivers would be enforced by the supreme court. *See id.* at 131–32. The trial court granted Blockbuster's motion, over C–Span's opposition, and ordered the case removed from the jury docket. C–Span sought mandamus relief in this Court.

In the meantime, Akin Gump filed its own motion seeking to quash C–Span's jury demand as to its claims against Akin Gump. The motion was conditioned upon the result of Blockbuster's motion, because

Akin Gump's stated goal was—and apparently continues to be—having all claims tried together in a single proceeding. However, the trial court denied Akin Gump's motion. Thus, Akin Gump seeks mandamus relief in this Court as well.

### STANDARD OF REVIEW

■■■ We review a petition for writ of mandamus under a clear abuse of discretion standard. *See Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992). A clear abuse of discretion occurs when the trial court errs in analyzing or applying the law to the facts or when the trial court has but one reasonable decision and does not make that decision. *Id.* at 840. Mandamus is appropriate only when the petitioner has no adequate remedy on appeal. *See id.* at 840. The issue of pre-suit waiver of trial by jury has been determined by our supreme court to "fit[ ] well within the types of issues for which mandamus review is not only appropriate but necessary." *Prudential*, 148 S.W.3d at 138.

### C–SPAN'S RIGHT TO TRIAL BY JURY

C–Span's petition identifies four issues for our consideration. One issue has been mooted by subsequent proceedings.[4] We address C–Span's remaining three issues in turn.

### *Waiver of Contractual Jury Waiver*

In its first issue, C–Span argues the trial judge abused his discretion by con-

---

3. We have before us neither a complete record of the parties' pleading history, nor a complete record of dispositive motions filed in this case. Accordingly, none of our conclusions regarding waiver of the right to a jury trial are intended to endorse, foreclose, modify, or otherwise comment upon the nature of the claims that remain to be tried below.

4. C–Span's fourth issue relates to Akin Gump, but was formulated at a time when Akin

Gump's motion to quash the jury demand was still pending in the trial court. That motion has now been ruled upon; indeed the trial court's ruling is the subject of the companion mandamus proceeding addressed herein, and C–Span has addressed the trial court's ruling as to Akin Gump in that companion proceeding. Accordingly, this issue, which attempted to preserve the right to a jury trial against Akin Gump, is now moot.

cluding Blockbuster was entitled to enforce the contractual jury waiver after joining in C–Span's request for a jury for more than two years. C–Span avers that Blockbuster's right to enforce the contractual provision was waived both implicitly (by more than two years of delay) and expressly (by entering into the series of jury-trial settings by agreement).

C–Span's implicit waiver argument relies heavily upon the case of *Rivercenter Associates v. Rivera*, 858 S.W.2d 366 (Tex. 1993). In that case, Rivercenter waited four months before moving to quash a jury demand that conflicted with the parties' agreement to waive a jury trial in any dispute arising under their lease. The trial court denied the motion. *Id.* at 367. Finding in the record "no apparent reason" for Rivercenter's delay in pursuing the issue, the supreme court denied mandamus relief. *Id.*

■ *Rivercenter* is clearly distinguishable from the case at bar. Initially, C–Span's case arrives in this Court in precisely the opposite procedural posture of *Rivercenter*. The trial court in *Rivercenter* had found waiver, and an appellate court would need to find a clear abuse of discretion to reverse that finding on petition for mandamus. In C–Span's case, the trial court found no waiver, and we would likewise need to find a clear abuse of discretion to reverse that finding. Indeed, to reverse the trial court here, we would need to conclude that Blockbuster waived its right to enforce its contractual jury waiver as a matter of law. The facts of this case do not yield the kind of certainty necessary for such a conclusion. The trial court did not have only one possible decision in this case; we will not second guess the decision it made. *See Walker*, 827 S.W.2d at 840.

Moreover, the evolving nature of the law controlling this case does not allow us to find a waiver as a matter of law. Before the supreme court issued its opinion in *Prudential*, this Court had refused to enforce pre-litigation jury waivers. *See In re Prudential Ins. Co. of America*, No. 05–02–01104–CV, 2002 WL 1608233 (Tex. App.-Dallas July 22, 2002) (not designated for publication). The supreme court specifically stated that the issue was one of first impression for that court. *See id.* at *8. We cannot say it was unreasonable for Blockbuster not to urge a motion to quash until the supreme court resolved the issue in a different fashion from this Court's resolution. If it was not unreasonable for Blockbuster to wait, then it was not unreasonable for the trial court to reject C–Span's argument of waiver based on Blockbuster's waiting. We find no clear abuse of discretion in the trial court's decision to reject C–Span's waiver argument.

### Relationship Between Agreements

■ In its second issue, C–Span argues that the trial court abused its discretion by concluding the jury waiver provisions found in the Standard Franchise Agreements apply to claims arising under the Asset Sale Agreement. According to C–Span, the Asset Sale Agreement and the Standard Franchise Agreements are separate documents, governing different transactions, and they are incapable of integration. Moreover, according to C–Span, Blockbuster's claims arise solely out of the Asset Sale Agreement, making reference to the Standard Franchise Agreements inappropriate in any event. We disagree with both arguments.

The Asset Sale Agreement does contain an integration clause. However, beginning with the integration clause itself, the Asset Sale Agreement clearly contemplates and participates in the Standard Franchise Agreements. The integration clause states in relevant part:

**12.3 Entire Agreement.** This Agreement, including the exhibits and schedules, contains the entire agreement of the parties hereto.... Any reference herein to this Agreement shall be deemed to include the schedules and exhibits.

Schedule 1.1.2 to the Asset Sale Agreement—made a part of the agreement by the above-quoted language—is titled "List of Franchise Documents," and the list includes "Standard Franchise Agreement for each of the Stores, together with all additional documents required thereunder ..." Arguably, this schedule would suffice to bring the Standard Franchise Agreements—and their jury waivers—within the Asset Sale Agreement. But if there were any doubt of the relationship between the agreements, the Asset Sale Agreement's recitals include the following statement:

The Stores will be operated by the Purchaser pursuant to the terms of certain franchise agreements and area development agreements identified on *Schedule 1.1.2* (collectively, the "Franchise Documents") to be entered between the Seller and the Purchaser as of Closing Date.

And then the Asset Sale Agreement concludes with this series of promises:

**12.18 Transfer of Franchise Documents.** The Purchaser, the Seller and the Shareholder agree that the Franchise Documents shall be assigned to the Purchaser and the Purchaser shall assume the Shareholder's obligations under the Franchise Documents (the "Transfers"). The Shareholder agrees that within ten (10) business days after the Closing Date, the Shareholder shall effect the Transfers, and the parties hereto agree that prior to or concurrently with the Transfers the parties shall execute and deliver, or cause to be executed and delivered, all documents requires by the Franchise Documents (the "New Agreements"). The Seller hereby waives its right of first refusal, if any, with respect to and hereby consents to the Transfers, subject to the execution and delivery of the New Agreements.

Accordingly, the final act of the parties to the Asset Sale Agreement was to assure that the Standard Franchise Agreements were executed and delivered.

We conclude the Asset Sale Agreement and Standard Franchise Agreements were part of the same transaction and, therefore, must be construed together. *See Prudential*, 148 S.W.3d at 135.[5] We further conclude that the Asset Sale Agreement incorporated the jury waiver in the Standard Franchise Agreements. *See id.* Accordingly, we find no clear abuse of discretion in the trial court's application of that jury waiver to claims arising under the Asset Sale Agreement.

*Ambiguity*

■ C–Span's third issue argues the jury waiver provisions of the Standard Franchise Agreements are rendered ambiguous by application to claims under the Asset Sale Agreement and that this ambiguity precludes a finding of knowing waiver by C–Span. Again, we disagree on the basis of the same facts and law governing C–Span's second issue. The Asset Sale Agreement and the Standard Franchise Agreements were made part of the same transaction through the unambiguous language of the parties' agreements. C–Span identifies no rational basis for a finding of ambiguity in those agreements. We find

---

**5.** Because the documents were part of the same transaction, it is not surprising that Blockbuster might look to the Standard Franchise Agreements to determine the extent of its damages, if any, for its claims of breach of the Asset Sale Agreement.

no clear abuse of discretion in the trial court's refusal to make such a finding.

In sum, we conclude C–Span's issues are without merit.

### AKIN GUMP'S RIGHT TO RELY UPON THE CONTRACTING PARTIES' JURY WAIVER

In its own mandamus proceeding, Akin Gump identifies two issues. It argues that the trial court abused its discretion in forcing Akin Gump to jury trial while removing the C–Span–Blockbuster trial from the jury docket. According to Akin Gump, it should be permitted to rely upon C–Span's waiver of a jury for contractual and equitable reasons. Again, we disagree.

*Benefit of Contractual Jury Waiver*

■ Akin Gump's reliance on C–Span's contractual jury waiver is rooted in Akin Gump's relationship to C–Span. Akin Gump, of course, was C–Span's attorney— and hence C–Span's agent—during the process of putting together and consummating the deal between C–Span and Blockbuster. With this premise, Akin Gump relies upon a series of arbitration cases, particularly *McMillan v. Computer Translation Systems & Support, Inc.*, 66 S.W.3d 477 (Tex.App.-Dallas 2001) (orig.proceeding), wherein an agent was bound by the same agreement to arbitrate that bound the agent's principal. However, the agency relationship that requires enforcement of agreements to arbitrate in these cases is distinguishable from the one before this Court. In the arbitration cases, the reason to hold the agent to the principal's agreement is that the agent acted on behalf of the principal in the very conduct at issue in the case. If the principal would be required to arbitrate disputes arising out of that conduct, so should the agent. *See id.* at 481 (agents' allegedly wrongful acts related to behavior as agents

and those acts were within scope of claims covered by arbitration provision for which principal would be liable). However, in this case, the claim of Akin Gump's liability is premised on entirely different conduct than is its principal's potential liability. Indeed, rather than liability based upon agency principles—an agent acting on behalf of his principal based on authority to do so—the relevant liability here is that of the agent *to* its principal for allegedly violating its duties as agent. Stated differently, C–Span's claims against Blockbuster and its claims against Akin Gump are separate and distinct. This is not a case of vicarious liability. Akin Gump's one-time status as agent to C–Span will not allow it to avail itself of C–Span's jury waiver that was given not as to Akin Gump, but as to Blockbuster.

We find no clear abuse of discretion in the trial court's rejection of Akin Gump's argument that agency principles support its reliance upon C–Span's jury waiver in this case.

*Equitable Benefit of Jury Waiver*

■ Finally, Akin Gump argues that it should be allowed the benefit of C–Span's jury waiver on equitable principles. Akin Gump argues that the trial court has "set the stage for the inevitable consequence of inconsistent results at trial" if it is forced to defend itself before a jury and the C–Span claims proceed before the trial court. Specifically, Akin Gump professes concern that its defenses will "certainly" be subject to inconsistent resolution if both a jury and the trial court must assess proportions of responsibility as among the three parties to the case. Again, we review this issue for a clear abuse of discretion. Matters of equity are committed to the trial court's discretion. *Tolpo v. Decordova*, 146 S.W.3d 678, 684 (Tex.App.-Beaumont 2004, no pet.) (citing *Burrow v.*

*Arce,* 997 S.W.2d 229, 246 (Tex.1999)); *see also Penick v. Penick,* 783 S.W.2d 194, 198 (Tex.1988) (acknowledging "great latitude" to be given trial court in applying equitable principles). Likewise, a trial court has the inherent power to control the disposition of cases on its docket, and the discretion vested in the trial court over the conduct of a trial is great. *Dow Chemical Co. v. Francis,* 46 S.W.3d 237, 240 (Tex. 2001). Nothing in the record before us demonstrates that the trial court abused its discretion by denying Akin–Gump's equitable arguments or by determining that different procedures could fairly apply in the trial court to the Blockbuster/C–Span claims and the Blockbuster/Akin Gump claims.

We decide both of Akin Gump's issues against it.

### CONCLUSION

We find no clear abuse of discretion in either proceeding. Accordingly, we deny both writs.