In The


 

Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-06-118 CV


____________________



IN RE BAPTIST HOSPITALS OF SOUTHEAST TEXAS






Original Proceeding






MEMORANDUM OPINION


 On motion for rehearing, our opinion of June 15, 2006, is withdrawn, and the
following opinion is issued in its place. 

 In this mandamus proceeding, Baptist Hospitals of Southeast Texas complains of the
trial court's refusal to dismiss the healthcare liability claims of Connie Woods and Jeff
Woods, the Real Parties in Interest. Connie Woods was admitted to Baptist Hospital with
"bizarre and delusional" behavior. While a patient in Baptist's psychiatric unit, Connie was
found to have "severe caustic burns" on her feet. The Woods sued Baptist and asserted the
burns were "proximately caused and contributed to" by Baptist's negligence. Pursuant to
statute, (1) the Woods filed an expert report by Linda Stafford, an "Advanced Practice
Registered Nurse," who concluded Baptist was negligent. Baptist challenged the expert
report in its Motion to Dismiss. Subsequently, the Woods added claims for premises liability
and breach of contract. The trial court overruled Baptist's dismissal motion. Baptist seeks
a writ of mandamus directing the trial court to vacate its order denying Baptist's motion to
dismiss, to enter a final judgment dismissing the Woods' claims with prejudice, and to award
Baptist attorneys' fees and costs of court. We conditionally grant the writ in part.

Standard of Review


 Mandamus will issue only if the trial court has committed a clear abuse of discretion
and the relators have no adequate remedy by appeal. In re Prudential Ins. Co. of Am., 148
S.W.3d 124, 135-36 (Tex. 2004) (citing Walker v. Packer, 827 S.W.2d 833, 840 (Tex.
1992)). A trial court abuses its discretion when it fails to analyze or apply the law correctly
or when it acts unreasonably, arbitrarily, or without reference to guiding rules and principles. 
Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985); Packer, 827
S.W.2d at 840. We review a trial court's ruling on a motion to dismiss a healthcare liability
claim for abuse of discretion. Bowie Mem'l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002);
Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 878 (Tex. 2001). 

Waiver


 The Woods argue Baptist did not employ due diligence in contesting the report,
because Baptist waited too long after the Woods filed suit to file the dismissal motion and
pursue mandamus relief. Section 13.01 of former article 4590i contains no deadline for filing
a motion to dismiss. The Woods argue nevertheless that the delay in seeking equitable
mandamus relief requires denial of the petition, because equity aids the diligent. 

 In Jernigan v. Langley, the Supreme Court held that when a defendant waits to file
a motion for dismissal, the delay is insufficient to establish waiver unless the defendant's
silence or inaction shows an intent to yield the right to dismissal. Jernigan v. Langley, 111
S.W.3d 153, 157 (Tex. 2003) (citing Tenneco Inc. v. Enter. Prods. Co., 925 S.W.2d 640, 643
(Tex. 1996)). Participation in discovery is insufficient to establish waiver because an attempt
to learn more about the case in which one is a party does not demonstrate an intent to waive
the right to move for dismissal under section 13.01(e). Jernigan, 111 S.W.3d at 157. The
record does not show Baptist did anything inconsistent with an intent to rely upon its right
to file a motion to dismiss. 

 As support for its petition, Baptist cites the recent decision by the Texas Supreme
Court in Diversicare General Partner, Inc. v. Rubio, 185 S.W.3d 842 (Tex. 2005). Because
Rubio was not decided until 2005, Baptist argues that a delay -- until after case law clarifying
its right to relief became settled -- was not unreasonable. See generally In re C-Span Entm't,
Inc., 162 S.W.3d 422, 426 (Tex. App.--Dallas 2005, orig. proceeding). Baptist also notes the
effect of Hurricane Rita on proceedings in the case. 

 Mandamus relief is appropriate if Baptist has a statutory right to dismissal, the right
has not been waived, and Baptist has no adequate remedy by appeal. See generally Jernigan,
111 S.W.3d at 156-57; see In re Prudential Ins. Co. of Am., 148 S.W.3d at 135-36; In re
Samonte, 163 S.W.3d 229, 238 (Tex. App.--El Paso 2005, orig. proceeding). We conclude
any delay in pursuing the motion to dismiss and mandamus relief was reasonable under the
circumstances presented. Baptist is not precluded from seeking mandamus relief.

 Expert Report


 Section 13.01(d) requires plaintiffs in healthcare liability suits to submit an expert
report. The expert report requirement "establishes a threshold over which a claimant must
proceed to continue a lawsuit." Murphy v. Russell, 167 S.W.3d 835, 838 (Tex. 2005). The
issue for the trial court is whether the report represents a good-faith effort to comply with the
statute's requirement. See Palacios, 46 S.W.3d at 878; art. 4590i, § 13.01(r)(6). To satisfy
the "good-faith effort" requirement, the report must provide sufficient specific information
to fulfill two purposes: (a) inform the defendant of the specific conduct the plaintiff has
called into question; and (b) provide a basis for the trial judge to conclude the claim has
merit. Palacios, 46 S.W.3d at 875, 879. The report must include the expert's opinion on
three elements: standard of care, failure to meet the standard, and the causal relationship
between that failure and the injury, harm, or damages claimed. Id. at 878; art. 4590i, §
13.01(l), (r)(6). A report that omits any of the statutory elements is not a good-faith effort. 
Palacios, 46 S.W.3d at 879. The report cannot merely state the expert's conclusions about
these elements. Id. "'[R]ather, the expert must explain the basis of [her] statements to link
[her] conclusions to the facts.'" Wright, 79 S.W.3d at 52 (quoting Earle v. Ratliff, 998
S.W.2d 882, 890 (Tex. 1999)). "The trial court should look no further than the report itself,
because all the information relevant to the inquiry is contained within the document's four
corners." Wright, 79 S.W.3d. at 52 (citing Palacios, 46 S.W.3d at 878). 

 Under Rubio, a cause of action against a healthcare provider is a healthcare liability
claim under the MLIIA (Medical Liability and Insurance Improvement Act) if the claim is
based on an alleged departure from an accepted standard of medical care, healthcare, or
patient safety, whether the action sounds in tort or contract. Rubio, 185 S.W.3d at 848. The
admission and monitoring of Connie Woods and the nursing services provided to her were
part of her healthcare. See id. at 850. The claims that Baptist breached a contract with
Connie and failed to provide proper supervision are healthcare liability claims. Id. at 848.
The claims relate to and are an inseparable part of the Woods' claim that Baptist departed
from acceptable standards of medical care in failing to properly supervise and monitor
Connie. These claims fall within the scope of the MLIIA. Under the MLIIA, a claimant
must file a report setting out the expert's opinion regarding the causal relationship between
the failure to meet the standard of care and the injury. Art. 4590i, § 13.01(r)(6). 

 Baptist contends the expert report is insufficient because Stafford is not qualified to
give an opinion on medical causation, and the opinions she offers on causation are
conclusory. Baptist argues an expert who makes conclusions about causation must be
qualified to diagnose the cause of the burns and to treat the burns. In its motion to dismiss,
Baptist described some of the report's alleged deficiencies as follows: "[B]ecause [Stafford]
has no expertise regarding such burns, her opinion reveals nothing regarding the likely timing
of [Connie's] exposure, what an earlier assessment would have revealed, what treatment
would have been initiated or how earlier treatment could have prevented or lessened such
injuries." 

 The Woods argue Stafford's report "measures up to the Texas Supreme Court's
standard" in Palacios. The Woods assert the report "specifically identified the conduct in
question (the Hospital failed to identify Connie Woods' burning feet) and provided a basis
for the trial court to conclude . . . that [Woods'] claims have merit (because the Hospital had
an obligation to provide the obvious and undisputedly needed first aid of washing the
chemical off so the burning would stop)." In setting out the standard of care in her report,
Stafford states as follows: 

 [I]t is my opinion that the applicable standards of care require that a hospital,
by and through its nursing and other staff, should have provided a secure and
safe environment for any patient such as and including Connie Woods, who
was obviously psychotic and delusional and unable to distinguish reality from
fantasy. Providing a safe environment, with appropriate staff involvement is
the most basic requirement for an acceptable psychiatric unit. Any individual
as psychiatrically ill as this woman should have been observed at least every
15 minutes as a minimal standard of safety. The hospital should have had
policies, procedures and staff supervision sufficient to insure such close
monitoring and supervision of Connie Woods' movements and activities -
sufficient to prevent her from deliberately and/or unintentionally harming
herself while she was in a pyschotic and delusional state. 


In stating the acceptable standard of care, Stafford sets out the following as the precautions
"an acceptable psychiatric unit" should take: 

 1. Careful inspection of entire body and contents of clothing and shoes at
time of admission;

 2. A refusal to rely solely on statements and/or medical history provided
by the patient; 

 3. A thorough physical exam of the patient. Family members, if available,
should be questioned about the patient's recent activities and possible
condition;

 4. Measures taken to insure patient's understanding of needed medical
interventions (including sedation, if necessary);

 5. "1:1 observation, or in the alternative, close and frequent personal
observations of the patient . . ."

 6. Ingress/egress security to prevent elopement. 


The report then states how Baptist breached the acceptable standard of care. Stafford states
Baptist failed to carefully inspect the patient's entire body and contents of her clothing and
shoes at the time of admission; relied on unreliable or incomplete statements or medical
history provided by the patient; failed to conduct a thorough physical exam upon admission;
failed to gather all available information pertinent to the patient's condition from family
members, if available; failed to promptly identify and treat her severe and ongoing caustic
burns; failed to enhance the likelihood of the patient's compliance with instructions and
acceptance of necessary medical aid (including sedation if necessary); and failed to "provide
1:1 observation" or, in the alternative, close and frequent personal observations of the patient. 
The report's causation statement is as follows:

 Regardless of what caustic agent was the specific etiology of the burns, I
believe that a caring, watchful hospital staff would have prevented this tragic
occurrence. Specifically, it is my opinion that the errors and deficiencies listed
above caused the patient to suffer severe caustic burns to her feet, and/or to
increase the severity of such burns, which would not have occurred had the
hospital rendered a prudent standard of care. 


 Generally, medical causation as it relates to the defendant's conduct is a required
element to be included in the report. Wright, 79 S.W.3d at 52. The report must state the
causal relationship between the failure to meet the applicable standards of care and Woods'
injury. See id. at 53. Proximate cause includes cause-in-fact and foreseeability. IHS Cedars
Treatment Ctr. of Desoto, Texas, Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004) (citing D.
Houston, Inc. v. Love, 92 S.W.3d 450, 454 (Tex. 2002)). The test for cause-in-fact is
whether the negligent act or omission, without which the harm would not have occurred, is
a "substantial factor" in bringing about an injury. IHS Cedars Treatment Ctr., 143 S.W.3d
at 799. The defendant's conduct may be too attenuated from the resulting injuries to be a
substantial factor in bringing about the harm. Id. at 800. Put another way, the causal link
between conduct and injury may be too remote when two separate and sequential tortious
incidents join to lead to the injury. Id. 

 Given the "substantial factor" requirement, it is possible Baptist's negligence, if any,
did not increase or cause the ultimate harm if Connie Woods sustained the burns prior to
becoming a patient at Baptist. If Woods was burned prior to admission, Stafford's report
does not adequately address the causal connection between the claimed breaches in the
standard of care on admission and the burns. Stafford is not shown in the report to be
qualified to testify regarding Woods' prognosis had the burns been discovered at admission. 
The existence of the burns may not need to be established by expert testimony. However,
if the burns occurred before Woods was seen at Baptist, Stafford's report does not adequately
explain how the alleged breaches of the standard of care increased the severity of the injuries. 
Although an expert report need not marshal all the plaintiffs' proof or meet the requirements
for evidence offered to support a summary judgment or at trial, the report must set out
sufficiently specific information to provide the trial court a basis to conclude the claim has
merit. See Palacios, 46 S.W.3d at 875, 878-79. The report is inadequate concerning any
healthcare liability claim based on pre-admission burns.

 In our original opinion, we ordered dismissal of all claims. We have reconsidered our
decision. On motion for rehearing, the Woods assert the burns occurred after admission to
Baptist. Assuming the burns occurred while Woods was a patient at Baptist, Stafford's
report satisfies the "good-faith effort" requirement by informing Baptist of the specific
conduct Woods has called into question and by providing a basis for the trial judge to
conclude the claim has merit. Palacios, 46 S.W.3d at 875, 879. The report includes
Stafford's opinion on the appropriate standard of care for a patient in a psychiatric unit, a
statement of how Baptist failed to meet that standard, and an explanation of the causal
relationship between the breach of the standard and the injury. Stafford stated the acceptable
standard would require "1:1 observation, or in the alternative, close and frequent personal
observations of the patient [,]" and Stafford stated Baptist failed to provide "1:1 observation,
or in the alternative, close and frequent personal observations of the patient sufficient to
insure that her location in the facility and her activities did not permit her to harm herself, or
to be harmed by any caustic chemical being maintained or used on the premises." Stafford
then concluded that a proper observation of Woods would have prevented the injury, and that
"the errors and deficiencies [described in the report] caused [Connie Woods] to suffer severe,
caustic burns to her feet, and/or to increase the severity of such burns, which would not have
occurred had the hospital rendered a prudent standard of care." This statement identifies a
causal connection between the breach of the standard of care and the burn injuries she
sustained, if the exposure occurred while Woods was a patient at Baptist. 

 Baptist argues Stafford is not qualified to offer an expert opinion on burn causation. 
What Stafford states is that if Baptist had properly supervised Woods while Woods was a
patient at Baptist, the burns would not have occurred. Unlike a claim regarding pre-admission burns, the causation issue presented involves prevention rather than lessening of
the injury. Stafford is qualified to offer expert opinion on the appropriate standard of nursing
care to prevent an injury of a patient while in a psychiatric unit. An Advanced Practice
Registered Nurse, Stafford is certified as a Clinical Specialist in Adult Psychiatric and
Mental Health Nursing. We conclude she is qualified to state the nursing standard of care,
to explain how Baptist breached that standard, and to offer an expert opinion on how the
breach of the nursing standard caused an exposure sustained after Woods was admitted to
Baptist. Stafford's expert report meets the requirements of article 4590i, section
13.01(d),(r)(6) for a patient's exposure which allegedly could have been prevented from
occurring at Baptist. 

 "When reviewing matters committed to the trial court's discretion, a court of appeals
may not substitute its own judgment for the trial court's judgment." Wright, 79 S.W.3d at
52. The question we reconsider on motion for rehearing is whether the report satisfies the
requirements of the statute for an exposure to a caustic chemical alleged to have occurred 
at Baptist. To the extent the trial court denied the motion to dismiss a claim that Baptist was
negligent in not preventing Woods' exposure to a caustic chemical that first occurred after
her admission at Baptist, the trial court did not abuse its discretion. 


 No Adequate Remedy at Law


 Baptist contends it has no adequate remedy at law and is entitled to mandamus relief. 
The Legislative "Findings and Purposes" of the MLIIA reveal the Legislature's clear intent
to remedy a crisis in Texas regarding the number of healthcare liability claims. (2) Section
13.01 entitles a defendant to pretrial dismissal if an adequate expert report is not timely filed.
See art. 4590i, § 13.01(d), (e)(3), (l), (r). A post-trial appeal cannot remedy the deprivation
of a statutory right to pretrial dismissal with prejudice. See In re Samonte, 163 S.W.3d at
238; In re Collom & Carney Clinic Ass'n, 62 S.W.3d 924, 928-30 (Tex. App.--Texarkana
2001, orig. proceeding) (Mandamus was proper because the Act requires dismissal when a
proper expert report is not timely filed.). "Where a report totally omits one of the three
required elements, the trial court has a ministerial duty to dismiss the lawsuit with prejudice
and has no discretion to do otherwise." In re Samonte, 163 S.W.3d at 238 (citing In re Tenet
Hosps. Ltd., 116 S.W.3d 821, 823-27 (Tex. App.--El Paso 2003, orig. proceeding)). 

 The Texas Supreme Court recently denied petitions for mandamus in a series of cases
discussed in a 2004 concurring and dissenting opinion. See In re Woman's Hosp. of Tex.,
Inc., 141 S.W.3d 144 (Tex. 2004) (Owen, J., concurring and dissenting). After the Supreme
Court's denial of these mandamus petitions, a series of courts of appeals' cases denying
mandamus relief followed. (3) However, we agree with the Amarillo court that "[p]ending a
definitive ruling from the high court, [the court of appeals] will adhere . . . to [its] previously-expressed view that mandamus is available in a proper case." In re Windisch, 138 S.W. 3d
at 510. We consider the adequacy of a remedy by appeal on a case-by-case basis. 

 We conclude the expert report does not comply with the Act's requirements only with
respect to a healthcare liability claim that Baptist was negligent in failing to detect and treat
pre-admission burns. Baptist has no adequate remedy at law with respect to that claim. We
conditionally grant the petition for writ of mandamus in part and order dismissal of the
healthcare liability claim to the extent plaintiffs' pleadings assert earlier discovery of pre-admission burns would have lessened the effects of the exposure. 

 The trial court acted within its discretion to the extent it denied the motion to dismiss
the alternative claim that exposure to the caustic chemical first occurred on the hospital's
premises. We deny the writ with respect to this alternative post-admission chemical
exposure claim. 

 We are confident the trial court will grant the relief to which Baptist is entitled under
art. 4590i, section 13.01(e) and dismiss the healthcare liability claim based on an exposure
to a caustic chemical prior to admission to Baptist. The writ will issue only if the court does
not. 

 WRIT OF MANDAMUS CONDITIONALLY GRANTED IN PART.

 PER CURIAM

Submitted on April 6, 2006

Opinion Delivered August 31, 2006


Before Gaultney, Kreger, and Horton, JJ.
1. The law applicable to this case is former article 4590i, section 13.01 of the Medical
Liability and Insurance Improvement Act. See Act of May 5, 1995, 74th Leg., R.S., ch. 140,
§ 1, sec. 13.01, 1995 Tex. Gen. Laws 985-87, repealed by Act of June 2, 2003, 78th Leg.,
R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884. All section references in this opinion
are to the 1995 version of Texas Revised Civil Statutes, article 4590i. The current version
is found in chapter 74 of the Texas Civil Practices and Remedies Code. See Tex. Civ. Prac.
& Rem. Code Ann. §§ 74.001-74.507 (Vernon 2005 & Supp. 2005). 
2. Act of May 30, 1977, 65th Leg., R.S., ch. 817, § 1.02, 1977 Tex. Gen. Laws 2039
(former Tex. Rev. Civ. Stat. art. 4590i, § 1.02), repealed by Act of June 2, 2003, 78th Leg.,
R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 874, 884; see also Act of June 2, 2003, 78th
Leg., R.S., ch. 204, § 10.11(a)(5), 2003 Tex. Gen. Laws 847, 884 (reiterating the
Legislature's concern about the gravity of an ongoing "medical malpractice insurance
crisis").
3. See In re Benavides, 180 S.W.3d 211, 212 (Tex. App.--San Antonio 2005, orig.
proceeding); In re McAllen Med. Ctr., Inc., No. 13-05-441-CV, 2005 Tex. App. Lexis 8235,
*2 (Tex. App.--Corpus Christi, Oct. 5, 2005, orig. proceeding); In re Schneider, 134 S.W.3d
866, 869-70 (Tex. App.--Houston [14th Dist.] 2004, orig. proceeding).