# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00375-CV

**SEB, Inc. d/b/a Circle B Mobile Homes; Sam P. Bath, Jr.; and Larry Cousins, Appellants**

**v.**

**Alvie Campbell and Julia Campbell, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT**
**NO. D-1-GN-07-00756, HONORABLE PAUL R. DAVIS, JR., JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

This is an interlocutory appeal from a trial court's order denying a motion to compel arbitration. In a single issue, appellants SEB, Inc. d/b/a Circle B Mobile Homes ("SEB"), Sam P. Bath, Jr., and Larry Cousins (collectively, "Circle B") contend the trial court erred because the claims asserted against them by appellees Alvie Campbell and Julia Campbell are subject to a valid arbitration agreement and Circle B did not waive the right to arbitration. We reverse the trial court's order and remand the cause with instructions that the trial court compel arbitration of the Campbells' claims against Circle B.

## BACKGROUND

The Campbells purchased a manufactured home from SEB in 2004. Bath was SEB's president, and Cousins was a salesman for SEB involved in the sale. The home was manufactured by Cavco Industries, Inc. ("Cavco"). The Campbells also purchased the land on which the

manufactured home was located from 967, Ltd. ("967"). Cottonwood Enterprise, Inc. ("Cottonwood") was 967's general partner, and Doug Lewis was Cottonwood's vice president. In August 2006, the Campbells filed suit against SEB, Bath, Cousins, Cavco, 967, and Cottonwood asserting causes of action arising out of the negotiation and sale of the home and land. Specifically, the Campbells alleged causes of action for violations of the Texas Deceptive Trade Practices Act, breach of contract, promissory estoppel, trespass to chattel, negligence, negligence per se, common law fraud, fraud in a real estate transaction, and civil conspiracy.[1] Over the next 45 months, the Campbells pursued their claims against these defendants by serving discovery, responding to discovery requests, and responding to dispositive motions filed by Cavco, 967, Cottonwood, and Lewis. Circle B's litigation activities during that time included responding to the Campbells' discovery requests, responding to limited discovery from co-defendant Cavco, serving the Campbells with requests for disclosure, noticing two depositions that ultimately were not taken, and participating in depositions of Alvie Campbell and Julia Campbell that were noticed by a co-defendant.

In June 2010, Circle B filed a motion to compel arbitration of the claims asserted against it by the Campbells, relying on a document titled "Arbitration Agreement" that the Campbells signed on the day they closed on the home and land purchase. The Arbitration Agreement was signed by Bath under the company name "Circle B Homes." In their response and objection to the motion to compel arbitration, the Campbells asserted that Circle B had waived the right to arbitration by substantially invoking the judicial process to their prejudice. At the hearing

_____

[1] The Campbells later amended their petition to assert causes of action against Lewis.

on the motion to compel arbitration, the Campbells also argued that SEB was not a signatory to the Arbitration Agreement and therefore could not enforce it. The Campbells contend that the only parties to the Arbitration Agreement are the Campbells and "Circle B Homes," an entity they claim did not exist at the time the Arbitration Agreement was signed, is not presently a party to the litigation, and is not the entity from whom the Campbells purchased their manufactured home.[2]

After a hearing, the trial court denied Circle B's motion to compel arbitration without specifying the grounds for its ruling. This appeal followed.

## STANDARD OF REVIEW

In its motion to compel arbitration, Circle B sought to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16 (2006) and/or the Texas Arbitration Act ("TAA"), Tex. Civ. Prac. & Rem. Code Ann. §§ 171.001-.098 (West 2005). The Arbitration Agreement does not specify which law applies, and neither the parties nor the trial court has taken a position on the governing law.[3] In the end, however, there is no material difference between the two standards. Until recently, orders denying motions to compel arbitration subject to the FAA were not subject to interlocutory appeal; instead, they were reviewed in mandamus proceedings using an

---

[2] There is no dispute that the Campbells purchased the home from SEB, Inc. d/b/a Circle B Mobile Homes.

[3] Although the Arbitration Agreement recites that its "validity and enforceability" are governed by the FAA, it does not indicate whether that statute or the TAA governs other aspects of an arbitration proceeding pursuant to the agreement. Furthermore, the record does not include a copy of the sales contract for the mobile home purchase. *See In re L&L Kempwood Assocs., L.P.*, 9 S.W.3d 125, 127 (Tex. 1999) ("[I]f the parties do not explicitly state which statute applies, the courts must look to the contract between the parties, applying the FAA if the contract involves interstate commerce.").

abuse-of-discretion standard. *See Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272-73 (Tex. 1992). Under that standard we defer to the trial court's factual determinations if they are supported by evidence, but we review the trial court's legal determinations de novo. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009). As amended in 2009, section 51.016 of the civil practice and remedies code now permits courts to review such orders by appeal:

> In a matter subject to the [FAA], a person may take an appeal or writ of error to the court of appeals from the judgment or interlocutory order of a district court, county court at law, or county court under the same circumstances that an appeal from a federal district court's order or decision would be permitted by 9 U.S.C. Section 16.

Tex. Civ. Prac. & Rem. Code Ann. § 51.016 (West Supp. 2010). Section 51.016 applies to this appeal because it was initiated after September 1, 2009, the effective date of the statute. This Court has not addressed the standard of review applicable to appeals brought pursuant to section 51.016. However, in appeals of orders denying arbitration under the TAA, we also apply a no-evidence standard to the trial court's factual determinations and a de novo review to its legal determinations. *See Trammell v. Galaxy Ranch Sch., L.P.*, 246 S.W.3d 815, 820 (Tex. App.—Dallas 2008, no pet.).

Therefore, we apply the same standard when reviewing an interlocutory order denying a motion to compel arbitration regardless of whether the appeal is brought pursuant to the TAA or is authorized by civil practice and remedies code section 51.016. We will defer to the trial court's factual determinations if supported by the evidence, review its legal determinations de novo, and reverse the trial court's order only if we conclude that the trial court abused its discretion by denying the motion to compel arbitration. *See id*.

**DISCUSSION**

In a single issue, Circle B contends that the trial court erred because the claims asserted against it by the Campbells are subject to a valid arbitration agreement and they did not waive their right to arbitrate. A party seeking to compel arbitration must establish the existence of a valid, enforceable arbitration agreement and that the asserted claims fall within the agreement's scope. *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999). The party seeking arbitration has the initial burden to present evidence of an arbitration agreement. *Id.* Once the existence of an arbitration agreement has been established, a presumption attaches favoring arbitration. *Henry v. Gonzalez*, 18 S.W.3d 684, 689 (Tex. App.—San Antonio 2000, pet. dism'd by agr.). The burden then shifts to the opposing party to present evidence that the agreement was procured in an unconsionable manner or induced or procured by fraud or duress; that the other party has waived its right to compel arbitration under the agreement; or that the dispute falls outside the scope of the agreement. *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d at 573.

### Is There a Valid Arbitration Agreement?

Whether an enforceable agreement to arbitrate exists is a legal question that we review de novo. *J. M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). At the hearing on the motion to compel arbitration, SEB introduced into evidence a document titled "Arbitration Agreement" dated October 29, 2004 (the "Arbitration Agreement"). This agreement provides:

> This Arbitration Agreement ("Agreement") is executed contemporaneously with an installment or sales contract ("Contract") for the purchase of a manufactured home ("Home") as described in the Contract by the purchaser ("Purchaser") from the selling retailer ("Retailer").

5

. . .

All claims, disputes, and controversies arising out of or relating in any way to the sale, purchase, or occupancy of the Home including, but not limited to, any negotiations between the parties, the design, construction, performance, delivery, condition, installation, financing, repair or servicing of the Home and any warranties, either express or implied, pertaining to the Home, and including claims for equitable relief or claims based on contract, tort, statute, or any alleged breach, default, or misrepresentation, will be resolved by binding arbitration administered by the American Arbitration Association ("AAA") under its Commercial Arbitration Rules. Any contests to the validity or enforceability of this Agreement shall be determined by the provisions of the Federal Arbitration Act and the rules of the AAA.

. . .

CIRCLE B HOMES
6610 E Ben White
Austin, Texas 78741

By: /s/ Sam P. Bath                    X  /s/ Alvie Campbell
                                         X  /s/ JCampbell

The Campbells acknowledge that (i) they signed the Arbitration Agreement as part of the process by which they acquired the mobile home; (ii) they were the purchaser of the mobile home, and therefore they are the "Purchaser" referred to in the Arbitration Agreement; and (iii) they purchased the mobile home from SEB. The Campbells do not assert that there was fraud, deceit, or misrepresentation involved in their signing the Arbitration Agreement. Accordingly, the Campbells are bound by the agreement. *See In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) (absent fraud, misrepresentation, or deceit, parties are bound by terms of contract signed). In its verified motion to compel arbitration, SEB stated that it entered into the Arbitration Agreement with the Campbells. Bath, SEB's president, signed the Arbitration Agreement on behalf of "Circle B Homes." SEB moved to compel arbitration on the ground that SEB and the Campbells agreed at closing that all

disputes arising out of or relating to the Campbells' purchase of the mobile home would be resolved by binding arbitration.

The Campbells maintain that the Arbitration Agreement is "not valid or enforceable" by SEB because it was not signed by SEB. In this regard, the Campbells assert that Sam P. Bath's signature on behalf of "Circle B Homes" is insufficient to constitute execution of the Arbitration Agreement by SEB. But the Arbitration Agreement expressly provides that any contests to its validity or enforceability shall be determined by the provisions of the Federal Arbitration Act, which does not require an arbitration agreement to be signed, so long as it is in writing and agreed to by the parties. *See In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 606 (Tex. 2005); *Security Serv. Fed. Credit Union v. Sanders*, 264 S.W.3d 292, 301 (Tex. App.—San Antonio 2008, no pet.); *In re Autotainment Partners Ltd. P'ship*, 183 S.W.3d 532, 535 (Tex. App.—Houston [14th Dist.] 2006, orig. proceeding); *see also Valero Ref., Inc. v. M/T Lauberhorn*, 813 F.2d 60, 63-64 (5th Cir. 1987) (although FAA requires arbitration agreement to be written, it does not expressly require agreement to be signed by parties). Moreover, a contract can still be effective if signed by only one party. *See DeClaire v. G & B McIntosh Family Ltd. P'ship.*, 260 S.W.3d 34, 44 (Tex. App.—Houston [1st Dist.] 2008, no pet.). The Arbitration Agreement includes nothing to indicate that it was not effective unless signed by all parties. Consequently, even if we agreed with the Campbells' assertion that SEB did not actually sign the Arbitration Agreement, such alleged failure would not, in this case, constitute a bar to the agreement's validity or enforceability.

The Campbells next contend that SEB is not a party to the Arbitration Agreement because (1) the name SEB, Inc. d/b/a Circle B Mobile Homes does not appear in the text of the

7

agreement, and (2) the party that signed the agreement was "Circle B Homes," not "Circle B Mobile Homes." Although the Arbitration Agreement does not refer to SEB by name, it does refer to the "selling retailer" of the mobile home, which all parties agree was SEB. Moreover, the fact that the agreement was signed by Sam P. Bath under the company name "Circle B Homes" supports, rather than undermines, the conclusion that SEB is a party to the Arbitration Agreement. Circle B Mobile Homes is a d/b/a of SEB, the company from which the Campbells bought their mobile home. Sam P. Bath is its president. Bath's signature on the Arbitration Agreement is consistent with, and is further evidence supporting, SEB's contention that the purchaser and the seller of the mobile home in question agreed to arbitrate any disputes arising from that transaction. We reject the Campbells' suggestion that the omission of the word "Mobile" from the signature block proves that the agreement is between them and an entity wholly unrelated to SEB called "Circle B Homes"—an entity the Campbells acknowledge does not exist. The only reasonable conclusion is that the omission of the word "Mobile" was an oversight, and that Bath's signature evidences that the retailer (SEB) agreed to the arbitration provision. We hold that the evidence conclusively shows that the Campbells and SEB agreed to arbitrate any disputes arising out of or related to the Campbells' purchase of the manufactured home. We further conclude, and the Campbells do not contend otherwise, that the claims asserted against SEB in this lawsuit all arise out of or relate to the home purchase and are therefore covered by the Arbitration Agreement.

The Arbitration Agreement also applies to the claims asserted against Bath and Cousins. When the principal is bound by the terms of a valid arbitration agreement, its agents, employees, and representatives are also covered by the agreement. *See In re Merrill Lynch Trust*

8

*Co.*, 123 S.W.3d 549, 555 (Tex. App.—San Antonio 2003, orig. proceeding); *McMillan v. Computer Translation Sys. & Support, Inc.*, 66 S.W.3d 477, 481 (Tex. App.—Dallas 2001, orig. proceeding). The scope of an arbitration agreement may be extended to claims against agents of the principal bound by the agreement when all the agents' allegedly wrongful acts relate to their behavior as agents of the principal, and those acts were within the scope of the claims covered by the arbitration provisions for which the principal would be liable. *McMillan*, 66 S.W.3d at 481; *see also In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 762 (Tex. 2006) (parties to contract containing arbitration provision generally intend to include disputes about agent's actions because actions of corporate agent on behalf of corporation are deemed corporation's acts). Extending the scope of an arbitration provision to an agent of the party who agreed to arbitration furthers the policy favoring arbitration and the parties' intent to provide a single forum for resolving disputes arising under an agreement. *See McMillan*, 66 S.W.3d at 481 (citing *Pritzker v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 7 F.3d 1110, 1121 (3rd Cir. 1993)).

In the present case, the Campbells specifically alleged that their claims against Bath and Cousins arose out of actions taken within the course and scope of their employment with SEB. The causes of action alleged against Bath and Cousins all arose out of or are related to the Campbells' home purchase. On appeal, the Campbells do not dispute that they have asserted claims against Bath and Cousins, as agents of SEB, that relate to the manufactured home purchase. Rather, they contend that "no entity to which [] Bath and Cousins were agents is a party to the alleged Arbitration Agreement." Because we have concluded that SEB is a party to the Arbitration Agreement, the Campbells' only stated objection to Bath's and Cousins's motion to compel

9

arbitration fails. We hold that the claims asserted by the Campbells against both Bath and Cousins are covered by the Arbitration Agreement.

### *Did Circle B Waive the Right to Arbitration?*

The Campbells assert that Circle B waived the right to arbitration by participating in the underlying litigation for 45 months before moving to compel arbitration. As previously noted, neither the trial court nor the parties indicate whether this action is governed by the TAA, the FAA, or both, and the agreement fails to specify which law applies. The standard for determining waiver of the right to arbitration, however, is the same under both the TAA and the FAA. *See Sedillo v. Campbell*, 5 S.W.3d 824, 825 (Tex. App.—Houston [14th Dist.] 1999, no pet.). Courts will not find that a party has waived a right to enforce an arbitration agreement by taking part in litigation unless the party has substantially invoked the judicial process to the opposing party's detriment. *See In re Bank One, N.A.*, 216 S.W.3d 825, 827 (Tex. 2007); *In re Serv. Corp. Int'l*, 85 S.W.3d 171, 174 (Tex. 2002). Whether a party has waived arbitration by litigation conduct is a question of law, which we review de novo. *See Perry Homes v. Cull*, 258 S.W.3d 580, 587 (Tex. 2008). A strong presumption against waiver exists, and any doubts are resolved in favor of arbitration. *See In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 783 (Tex. 2006); *In re Bruce Terminix Co.*, 988 S.W.2d 702, 705 (Tex. 1998). Implying waiver from a party's actions is appropriate only if the facts demonstrate that the party seeking to enforce arbitration intended to waive its arbitration right. *See EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 89 (Tex. 1996).

Waiver must be decided on a case-by-case basis looking at the totality of the circumstances. *See Perry Homes*, 258 S.W.3d at 591. Factors considered in determining whether

a party has substantially invoked the judicial process include how much discovery has been conducted and who initiated it, whether the discovery related to the merits rather than arbitrability or standing, how much of the discovery would be useful in arbitration, and whether the movant sought judgment on the merits. *Id.* at 591-92. Whether the movant is a plaintiff or defendant is also relevant to the consideration, but does not alone justify a finding of waiver or change the "totality of the circumstances test." *Id.* at 592.

Circle B's use of the judicial process was limited to filing answers, serving a first and later an amended request for disclosure, noticing two depositions that ultimately were not taken, and participating in the depositions of Alvie Campbell and Julia Campbell that were noticed by co-defendant Cavco. The remainder of the discovery was propounded either by the Campbells or by other parties to the litigation. Circle B did not seek a judicial resolution of the dispute with the Campbells, nor has it filed affirmative claims or dispositive motions. This is not a case in which the party seeking arbitration turns to arbitration only after failing to obtain a satisfactory result in court. *See In re Bruce Terminix Co.*, 988 S.W.2d at 704. While Circle B did not file the motion to compel arbitration until 45 months after the suit was originally filed, delay alone is generally not sufficient to establish waiver. *See In re Vesta Ins. Group, Inc.*, 192 S.W.3d at 763.

The Campbells argue that this Court should also consider the activities of co-defendant Cavco because of "Cavco's consent to arbitration, its status as a beneficiary [of the Arbitration Agreement], and considering that the Campbells will be forced to arbitrate their claims against Cavco." As an initial matter, we note that Cavco did not file a motion to compel arbitration and, because the issue is not before us, we express no opinion as to whether Cavco has waived any

11

right to arbitration it may have under the Arbitration Agreement. We do agree, though, that in certain circumstances the litigation activities of a co-defendant may be relevant to the question of whether a party seeking arbitration invoked the judicial process, as, for example, when a co-defendant moves for summary judgment on an issue common to all defendants. In this case, however, Cavco moved for summary judgment on causes of action asserted against it based on particular facts not generally applicable to other co-defendants. Disposition of Cavco's motion for summary judgment thus had no effect on the claims asserted against SEB, Bath, or Cousins. We decline, therefore, to attribute Cavco's litigation activities to Circle B.

Not only did the Campbells fail to show that Circle B substantially invoked the judicial process, they also failed to establish that they suffered resulting prejudice. *See Perry Homes*, 258 S.W.3d at 595 (waiver of arbitration requires showing of prejudice); *In re Bruce Terminix Co.*, 988 S.W.2d at 704 ("Even substantially invoking the judicial process does not waive a party's arbitration rights unless the opposing party proves that it suffered prejudice as a result."). A court should not ordinarily infer waiver based on prejudice if a party seeking arbitration has conducted only a minimal amount of discovery, and the party opposing arbitration has not met its burden of showing sufficient prejudice. *See In re D. Wilson Constr. Co.*, 196 S.W.3d at 783. Taking unfair advantage of discovery proceedings that would not have been available in arbitration might constitute sufficient prejudice to infer waiver. *See Structured Capital Res. Corp. v. Arctic Cold Storage, LLC*, 237 S.W.3d 890, 895 (Tex. App.—Tyler 2007, no pet.). However, when only a minimal amount of discovery has been conducted, and such discovery may also be useful for the purpose of arbitration, courts do not ordinarily infer waiver based on prejudice to the party opposing

arbitration. *See In re D. Wilson Constr. Co.*, 196 S.W.3d at 783; *In re Vesta Ins. Group, Inc.*, 192 S.W.3d at 763; *In re Bruce Terminix Co.*, 988 S.W.2d at 763. Counsel for Circle B questioned two witnesses during depositions noticed by Cavco. Circle B also responded to discovery propounded by the Campbells. While the Campbells conducted a significant amount of discovery, Circle B did not serve the Campbells with any discovery beyond routine requests for disclosure. In *Perry Homes*, the supreme court observed that a party who *requests* a significant amount of discovery is not prejudiced by getting it and taking it to arbitration to the same degree as a party who *produces* significant discovery outside the stricter discovery limits of arbitration. 258 S.W.3d at 600. Moreover, the Arbitration Agreement states that arbitration is to be conducted in accordance with the rules and procedures of the American Arbitration Association. Those rules permit the arbitrator to allow discovery. *See In re Bruce Terminix*, 988 S.W.2d at 704-05. It is not clear what, if any, information Circle B or the Campbells obtained through discovery that would not be useful in an arbitration proceeding. There is no indication that Circle B obtained sensitive documents or information through the discovery process that they would not have been able to obtain in the arbitration proceeding. *See Williams Indus., Inc. v. Earth Dev. Sys. Corp.*, 110 S.W.3d 131, 135 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

At the hearing on the motion to compel arbitration, the Campbells' attorney attempted to establish prejudice by stating that he had "well over a hundred thousand dollars in just hard attorney's fees working on motions, depositions, and preparation to try this case." The supreme court has rejected a similar argument when, as here, the pre-trial costs were "largely self-inflicted" because the plaintiff sent "far more discovery requests than he received" and the party seeking

13

arbitration did not engage in extensive discovery. *See In re Vesta Ins. Group, Inc.*, 192 S.W.3d at 763 (no waiver when discovery activities of party seeking to compel arbitration were limited to serving standard request for disclosure, noticing four depositions, and sending request for production). Counsel for the Campbells further testified that his clients would be prejudiced because "his fee agreement addresses acting as trial counsel in this matter, and does not address the issues of acting as arbitration counsel." He stated that the Campbells would be "forced to obtain new counsel" for an arbitration. Assuming the truth of this assertion, the Campbells created this problem themselves by choosing to enter into such an agreement despite knowing that they had agreed to arbitrate these claims. Any prejudice they may suffer as a result of their decision to retain an attorney who was unable or unwilling to represent them in an arbitration proceeding is, like the expense of discovery they conducted, "self-inflicted." The Campbells' attorney also stated at the hearing that the added delay and expense of arbitration would prejudice the Campbells, but "generalized complaints about delay and expense, absent explanations and evidentiary support, will not establish prejudice." *Structured Capital Res. Corp.*, 237 S.W.3d at 896; *see also Texas Residential Mortgage, L.P. v. Portman*, 152 S.W.3d 861, 864 (Tex. App.—Dallas 2005, no pet.) (party arguing waiver of arbitration identified no work she had done nor cost incurred in anticipation of trial that she would not also have done or incurred in anticipation of arbitration hearing); *Associated Glass, Ltd. v. Eye Ten Oaks Invs., Ltd.*, 147 S.W.3d 507, 514 (Tex. App.—San Antonio 2004, orig. proceeding) (party urging waiver of arbitration did not submit evidence of increased expense and therefore failed to show prejudice); *Transwestern Pipeline Co. v. Horizon Oil & Gas*

14

*Co.*, 809 S.W.2d 589, 592 (Tex. App.—Dallas 1991, writ dism'd) (party who voluntarily incurred legal fees by initiating suit did not show prejudice).

We conclude that Circle B's predominantly defensive measures in response to the Campbells' actions did not substantially invoke the litigation process to the Campbells' detriment or prejudice. Moreover, the fact that the Campbells may have expended funds for legal fees is insufficient to establish prejudice. By deciding to initiate and prosecute their lawsuit, the Campbells voluntarily incurred these expenses and assumed liability for these costs. They cannot now rely on those very expenses and costs to establish prejudice and prevent Circle B from invoking the right to compel arbitration. Nothing before us demonstrates that these same expenses would not have been incurred during arbitration, nor that they will not provide a benefit to the Campbells in resolving this dispute in that forum.

We conclude that the Campbells and Circle B were parties to a valid and enforceable arbitration agreement, and that Circle B did not waive the right to arbitration by substantially invoking the judicial process to the Campbells' detriment. It was therefore an abuse of discretion for the trial court to deny Circle B's motion to compel arbitration. *See Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (trial court exceeds its discretion if it acts in arbitrary or unreasonable manner or without reference to guiding rules or principles).

**CONCLUSION**

For the reasons stated above, we reverse the trial court's order denying Circle B's motion to compel arbitration. We remand the cause with instructions that the trial court compel

15

arbitration of the Campbells' claims against SEB, Bath, and Cousins in accordance with the terms

of the Arbitration Agreement.[4]


_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Reversed and Remanded

Filed:   March 2, 2011

---

[4]   In its brief, Circle B requests this Court to render judgment ordering *all* parties to arbitration.  As previously noted, the issue of the arbitrability of the Campbells' claims against parties other than SEB, Bath, and Cousins is not before us in this appeal, and we express no opinion with regard to that issue.