# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00386-CV

**Pejman Dargahi; Kamran Dargahi; and Yekk Construction Services, LLC d/b/a Lakeway Custom Homes and Renovation, Appellants**

**v.**

**Dhiraj Handa and Ritu Handa, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT NO. D-1-GN-16-001279, HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In this interlocutory appeal we must determine whether the trial court properly denied a motion to compel arbitration. *See* Tex. Civ. Prac. & Rem. Code § 171.098 (providing for interlocutory appeal of orders denying motions to compel arbitration). In their motion, appellants Pejman Dargahi, Kamran Dargahi, and Yekk Construction Services, LLC d/b/a Lakeway Custom Homes and Renovation (Yekk) cited an arbitration clause that appears in a construction contract between Yekk and appellees Dhiraj Handa and Ritu Handa (the Handas) and contended that the clause covers all of the claims asserted by the Handas in their lawsuit against appellants. In their response to appellants' motion to compel, the Handas asserted that appellants Pejman and Kamran[1] may not enforce the arbitration agreement because they are not parties to it and that all appellants

---

[1] Because appellants and brothers Pejman Dargahi and Kamran Dargahi share the same surname, we will refer to them by their first names for convenience and to avoid confusion.

waived their right to enforce the clause by engaging in litigation. We will reverse the trial court's order denying appellants' motion to compel arbitration and render judgment granting the motion and staying the proceedings.

## BACKGROUND

The record shows that the Handas entered into a contract with appellant Lakeway Custom Homes and Renovation (Yekk's d/b/a) for the construction of a house on appellees' real property. The contract price was $1.46 million. After a dispute arose over payments and the parties attempted mediation, the Handas filed a lawsuit against Yekk, Pejman, and Kamran. Their lawsuit alleged that Pejman, who signed the contract on behalf of Yekk, represented to them that he and his brother, Kamran, were "partners" in the construction company.

The Handas' petition further alleged that after they had paid appellants about 95% of the contract price, appellants demanded further payments exceeding the contract price and ceased further work on the house when the Handas refused to pay the additional amount. The lawsuit alleged that appellants failed to pay subcontractors despite falsely representing that they had been paid, fraudulently diverted trust-fund payments made by the Handas to appellants' own use, and negligently performed the construction work. Their lawsuit sought damages for claims of breach of contract, breach of fiduciary duty, fraud, unjust enrichment, money had and received, theft, negligence, and violations of the DTPA.

Several months after answering the Handas' lawsuit and after some discovery had been conducted, which will be outlined in more detail below, appellants filed a motion to compel arbitration and stay the proceedings, citing the following clause in the parties' contract:

2

> If a dispute arises between Lakeway Custom Homes and Renovation and [the Handas], which cannot be resolved in good faith through informal discussions, the parties agree to submit the dispute to mediation before resorting to any litigation other than a suit to seek injunctive relief. If mediation is required, the parties shall jointly agree upon a mediator acceptable to both parties. If a dispute cannot be resolved through mediation, both parties agree to submit the dispute to binding arbitration supervised by the American Arbitration Association (AAA) . . . .

In response to the motion to compel, the Handas argued that (a) all three appellants—Yekk, Pejman, and Kamran—waived arbitration by "substantially invoking the judicial process" and (b) Pejman and Kamran were not parties to the arbitration agreement and, therefore, had no right to compel arbitration. After a hearing, the trial court denied the motion to compel, which decision we review on appeal.

## DISCUSSION

In a single issue, appellants contend that the trial court erred in denying their motion to compel arbitration and abate further trial-court proceedings because (a) the Handas' claims fall within the broad scope of the parties' arbitration agreement, which covers not only Yekk but also its agents and representatives, Pejman and Kamran; and (b) appellants did not waive their right to enforce the agreement. We review a trial court's denial of a motion to compel arbitration for abuse of discretion, deferring to the trial court's factual determinations if supported by the evidence, and reviewing the court's legal determinations de novo. *SEB, Inc. v. Campbell*, No. 03-10-00375-CV, 2011 WL 749292, at *2 (Tex. App.—Austin Mar. 2, 2011, no pet.) (mem. op.) (citing *Trammell v. Galaxy Ranch Sch., L.P.*, 246 S.W.3d 815, 820 (Tex. App.—Dallas 2008, no pet.)). Whether the

3

parties agreed to be bound to an arbitration agreement is a contract-formation question that we review de novo. *Oak Crest Manor Nursing Home, LLC v. Barba*, No. 03-16-00514-CV, 2016 WL 7046844, at *2 (Tex. App.—Austin Dec. 1, 2016, no pet.) (mem. op.).

A party seeking to compel arbitration must establish the existence of a valid, enforceable arbitration agreement and that the asserted claims fall within the agreement's scope. *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999), *abrogated in part on other grounds by In re Halliburton*, 80 S.W.3d 566 (Tex. 2002). Once the existence of an arbitration agreement has been established, a presumption attaches favoring arbitration. *SEB*, 2011 WL 749292, at *2. The burden then shifts to the opposing party to present evidence that the agreement was procured in an unconscionable manner or induced or procured by fraud or duress; that the other party has waived its right to compel arbitration; or that the dispute falls outside the scope of the agreement. *In re Oakwood Mobile Homes*, 987 S.W.2d at 573. In determining whether the original claims fall within the scope of the arbitration agreement, we focus on the factual allegations of the complaint, rather than the legal causes of action asserted. *In re FirstMerit Bank*, 52 S.W.3d 749, 754 (Tex. 2001). We consider whether the facts alleged are intertwined with the contract containing the arbitration clause. *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 271 (Tex. 1992). To be within the scope of an arbitration provision, the allegations need only be factually intertwined with arbitrable claims or otherwise touch upon the subject matter of the agreement containing the arbitration provision. *In re BP Am. Prod. Co.*, 97 S.W.3d 366, 370 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding). Furthermore, Texas law favors the joint resolution of multiple claims to prevent multiple determinations of the same matter. *Jack B. Anglin*, 842 S.W.2d at 271.

4

The Handas did not argue to the trial court that the dispute between the parties does not fall within the broad scope of the arbitration provision or that the provision is not enforceable generally. Rather, they argued that the individual defendants—Pejman and Kamran—may not compel arbitration because they are not parties to the agreement to arbitrate (*i.e.*, only Yekk is) and that, in any event, all of the defendants waived their rights to enforce the provision by "substantially invoking the judicial process" through their discovery and other pre-trial conduct for a period of nine months. We will address each argument in turn.

### *The individual defendants*

On the day of the hearing on appellants' motion to compel, the Handas filed a response to the motion in which they contended that Pejman and Kamran are not parties to the arbitration agreement and, therefore, may not enforce it. *See G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 524 (Tex. 2015) ("As a general rule, an arbitration clause cannot be invoked by a non-party to the arbitration contract." (internal quotation marks omitted)). Specifically, the Handas argued that the arbitration clause recites that disputes between "Lakeway Custom Homes and Renovation [Yekk]" and the Handas must be arbitrated but that there is no mention of Pejman or Kamran in the clause. In other words, the Handas contend that, while they agreed to arbitrate any disputes between themselves and Yekk, they did not agree to arbitrate disputes between themselves and Pejman or Kamran.

However, Texas courts recognize that when a principal is bound by the terms of a valid arbitration agreement, its agents, employees, and representatives are also covered by the agreement, even if those agents did not sign the agreement. *SEB*, 2011 WL 749292, at *4 (citing

*In re Merrill Lynch Tr. Co.*, 123 S.W.3d 549, 555 (Tex. App.—San Antonio 2003, orig. proceeding); *McMillan v. Computer Translation Sys. & Support, Inc.*, 66 S.W.3d 477, 481 (Tex. App.—Dallas 2001, orig. proceeding)); *see also In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 762 (Tex. 2006) (per curiam) ("When contracting parties agree to arbitrate all disputes 'under or with respect to' a contract . . . they generally intend to include disputes about their agents' actions."). "The scope of an arbitration agreement may be extended to claims against agents of the principal bound by the agreement when all the agents' allegedly wrongful acts relate to their behavior as agents of the principal, and those acts were within the scope of the claims covered by the arbitration provisions for which the principal would be liable." *SEB*, 2011 WL 749292, at *4 (citing *McMillan*, 66 S.W.3d at 481); *see also In re Vesta*, 192 S.W.3d at 762. Parties to an arbitration agreement may not evade arbitration through artful pleading, such as by naming individual agents of the party to the arbitration clause and suing them in their individual capacity. *In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 188 (Tex. 2007).

There are good reasons for this doctrine. First, corporate entities may act only through human agents. *See Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995). Any actionable conduct on the part of Yekk was necessarily committed by one or more of its human agents. Here, while appellant Yekk entered into an agreement with the Handas to construct a house and arbitrate any disputes, the actions associated with the various aspects of that house building necessarily and foreseeably fell on Yekk's human agents. *See In re Vesta*, 192 S.W.3d at 762 ("If arbitration clauses only apply to contractual signatories, then [the parties'] intent [to arbitrate] can only be accomplished by having every officer and agent (and every affiliate and its officers and agents) either sign the

6

contract or be listed as a third-party beneficiary. This would not place such clauses on an equal footing with all other parts of a corporate contract."). Secondly, courts have recognized that extending the scope of an arbitration provision to an agent of the party who agreed to arbitration furthers the policy favoring arbitration and the parties' intent to provide a single forum for resolving disputes arising under an agreement. *SEB*, 2011 WL 749292, at *4; *see McMillan*, 66 S.W.3d at 481 (citing *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1121 (3rd Cir. 1993)).

Here, despite the Handas' contentions that neither brother established his "agency" for Yekk, the evidence with respect to Pejman—in the form of the construction contract itself—establishes that he was acting as a representative of Yekk: his signature appears above his printed name and the printed name of "Lakeway Custom Homes and Renovation" (Yekk's d/b/a).[2] Accordingly, under the rule outlined in *In re Vesta* and *SEB*, the Handas' disputes against Pejman fall within the scope of the arbitration clause and must be arbitrated, to the extent that their disputes against Yekk must be. *See In re Vesta*, 192 S.W.3d at 762; *SEB*, 2011 WL 749292, at *4. We therefore need only consider whether the scope of the clause also covers the Handas' claims against Kamran, who did not sign the contract and whom the Handas contend on appeal did not otherwise conclusively establish his "agency" for Yekk.[3]

---

[2] Additional evidence submitted by Pejman with his motion to compel arbitration further establishes his "agency" for Yekk: (a) his affidavit stating that he was a "member and manager" of Yekk at the time he signed the contract and (b) the LLC's formation documents listing him as its initial member. *See also* Tex. Bus. Orgs. Code §§ 101.251, .254.

[3] Besides his signature not appearing on the contract, Kamran's affidavit does not aver that he is or was a member or officer of the LLC, nor does his name appear in the LLC's formation documents. While the jurat of Kamran's affidavit purports to indicate his agency, a jurat is not a part of an affidavit. *See Coberly v. State*, 640 S.W.2d 428, 431 (Tex. App.—Fort Worth 1982, pet. ref'd) (citing *Alexander v. State*, 57 S.W.2d 157 (Tex. 1933)).

Even though the Handas' pleadings pointedly name Kamran as a defendant for all their causes of action (*e.g.*, fraud, violation of the Trust Fund Act, and negligence) *except* breach of contract (naming only Yekk and Pejman as defendants for that cause), the substance of their pleadings reveals that the Handas have, nonetheless, sued him based on the contract and that their claims against him are "factually intertwined" with and fall within the scope of their claims against Yekk. *See Jack B. Anglin*, 842 S.W.2d at 271. Their pleadings' substance reveals that Kamran's potential liability arises from his conduct as a representative of Yekk: they allege that Kamran and his brother (a) negligently constructed the home (a task they undertook *due to the contract*), (b) misused funds (provided to them *pursuant to the contract*), and (c) failed to meet contractual obligations and common-law and statutory duties (that flow *from the existence of the contract*). The Handas have further pleaded that the Dargahi brothers are "trustees" of the progress payments made to them, *see* Tex. Prop. Code § 162.002 ("A contractor, subcontractor, or owner or an officer, director, or agent of a contractor, subcontractor, or owner, who receives trust funds or who has control or direction of trust funds, is a trustee of the trust funds."), and that they "are the ones responsible for the construction work." They have pleaded that Pejman represented to them that Kamran is his "business partner." Dhiraj Handa averred in his affidavit that he "hired Pejman Dargahi and Kamran Darghai ('the Builders') for construction of a single family residence." The Handas' pleadings name no other agents or representatives of Yekk except for Pejman and Kamran, and all of their alleged interactions with the construction company occurred through the two brothers. Based on the Handas' own pleadings, there can be no reasonable contention that the Handas engaged in interactions with Kamran and allegedly suffered thereby except in his capacity as a representative of Yekk.

8

Despite the form of their pleadings, all of the Handas' claims against both Pejman and Kamran "arise[] from and must be determined by reference to the parties' contract rather than general obligations imposed by law." *In re U.S. Home Corp.*, 236 S.W.3d 761, 765 (Tex. 2007) (citing *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131–32 (Tex. 2005) and *In re Vesta*, 192 S.W.3d at 762). While the Handas attempt to craft their claims against Kamran as arising solely under the common law or specific statutes, their factual allegations indicate that his allegedly actionable conduct occurred in the context of formation or performance of the construction contract, and those non-contractual claims are "predicated on the existence of the construction contract." *Courtland Bldg. Co., Inc. v. Jalal Family P'ship, Ltd.*, 403 S.W.3d 265, 273 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The Handa's claims against the Dargahi brothers do not merely "relate to" the construction contract but, rather, seek to "derive a direct benefit" from the contract by suing thereunder. *See G.T. Leach Builders*, 458 S.W.3d at 527–28 (holding that under principles of equitable estoppel, when party sues based on contract, it subjects itself to contract's terms, including arbitration clause, even against non-signatories). By their claims, the Handas are seeking direct benefits under the contract while simultaneously seeking to avoid its arbitration provision. Under the principles of equitable estoppel,[4] a claimant cannot "have it both ways"—it cannot, "on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which

---

[4] The Handas contend on appeal that the Dargahis have waived the theories of equitable estoppel and agency because they did not raise them at the trial court. While the Dargahis did not assert the theories in their motion to compel arbitration, they did respond to the Handas' arguments based on the theories at the hearing on the motion, and both parties identified relevant case law at the hearing, which we deem was sufficient to put the trial court on notice of the legal issues and theories before it. Accordingly, we conclude that the Dargahis did not waive their arguments about agency and equitable estoppel.

9

contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory." *Id.* at 527 (quoting *Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 305 (Tex. 2006)).

By filing this lawsuit, which in substance is based on the construction contract, the Handas subjected themselves to the contract's terms, including its arbitration clause. *See In re FirstMerit Bank*, 52 S.W.3d at 755. The Handas may not avoid the arbitration clause by claiming that either of the Dargahi brothers are not "agents" of Yekk, when their own pleadings complain of conduct by the brothers that occurred in connection with the formation or performance of the construction contract. Moreover, if the Handas were required to arbitrate their disputes against Yekk but litigate their disputes against one or both Dargahi brothers in court, it would thwart the policy favoring arbitration and the parties' intent to provide a single forum for resolving disputes arising under their contract. *See SEB*, 2011 WL 749292, at *4. The Handas' claims against both Pejman and Kamran are in substance claims against Yekk, and the alleged actionable conduct of the Dargahi brothers occurred in connection with their performance under the contract as representatives of Yekk. Accordingly, to the extent that the Handas' disputes with Yekk are subject to arbitration, so are their disputes with Pejman and Kamran.

### Waiver

The Handas' response also argued that all appellants waived arbitration by "substantially invoking" the judicial process. Courts will find that a party has waived a right to enforce an arbitration agreement by taking part in litigation only if the party has substantially invoked the judicial process to the opposing party's detriment. *Id.* at *5 (citing *In re Bank One, N.A.*,

10

216 S.W.3d 825, 827 (Tex. 2007) (per curiam)); *see also Perry Homes v. Cull*, 258 S.W.3d 580, 587 (Tex. 2008).  Whether a party has waived arbitration by litigation conduct is a question of law, which we review de novo.  *Perry Homes*, 258 S.W.3d at 587.  A strong presumption against waiver exists, and any doubts are resolved in favor of arbitration.  *See In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 783 (Tex. 2006).  "Due to the strong presumption against waiver of arbitration, this hurdle is a high one."  *Perry Homes*, 258 S.W.3d at 587.

Implying waiver from a party's actions is appropriate only if the facts demonstrate that the party seeking to enforce arbitration intended to waive its arbitration right.  *See EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 89 (Tex. 1996).  While waiver may be implied from a party's conduct, that conduct must be unequivocal.  *Perry Homes*, 258 S.W.3d at 593.  Additionally, to successfully prove waiver of an arbitration agreement, a party alleging waiver must demonstrate prejudice resulting from the movant's conduct, which refers to the "inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue."  *Id.* at 597 (quoting *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 346 (5th Cir. 2004)).

Waiver is decided on a case-by-case basis by assessing the totality of the circumstances.  *Perry Homes*, 258 S.W.3d at 591.  Key factors include:  (a) whether the movant was plaintiff or defendant, (b) how long the movant delayed before seeking arbitration, (c) whether the movant knew of the arbitration clause all along, (d) how much pretrial activity related to the merits rather than arbitrability or jurisdiction, (e) how much time and expense has been incurred in litigation, (f) whether the movant sought or opposed arbitration earlier in the case, (g) whether the movant filed affirmative claims or dispositive motions, (h) what discovery would be unavailable

11

in arbitration, (i) whether activity in court would be duplicated in arbitration, (j) when the case was to be tried, and (k) how much discovery has been conducted and who initiated it. *Id.* at 591–92; *see also Richmont Holdings, Inc. v. Superior Recharge Sys., L.L.C.*, 455 S.W.3d 573, 575 (Tex. 2014) (per curiam); *Kennedy Hodges, L.L.P. v. Gobellan*, 433 S.W.3d 542, 545 (Tex. 2014).

The circumstances here that are relevant to the above factors are the following:

- 9 months elapsed between the time that the Handas filed their lawsuit and the time appellants filed their motion to compel arbitration;

- appellants were the defendants below;

- the Handas served on appellants one set of requests for production (RFP);

- the Handas hired an inspector who prepared an "expert report" detailing his findings about the allegedly defective work performed by appellants;

- the Handas filed a motion to compel appellants to respond to their RFP, to which appellants ultimately responded;

- the parties entered into a Rule 11 agreement concerning the Handas' motion to compel discovery, avoiding a hearing on the matter;

- the Handas filed a partial motion for summary judgment (on liability) six days before appellants filed their motion to compel arbitration;

- appellants knew of the arbitration clause at least as early as when they obtained new counsel, about three months before filing their motion to compel arbitration;

- appellants did not indicate any reason for their delay in moving to compel arbitration;

- appellants did not notice or take any depositions, and no depositions were taken by any party; and

- 6 days before they filed their motion to compel arbitration, appellants issued a subpoena to a third party (the Handas' lender for the house-construction

project) seeking the production of records related to the loan or real property at issue.

We conclude that the factors weighing in favor of waiver—the unexplained 9-month delay, appellants' issuance of the subpoena to the Handas' lender, the Handas' filing of a motion for partial summary judgment and the timing of appellants' motion to compel arbitration shortly thereafter, and the Handas' conducting of minimal discovery—do not constitute substantial invocation of the judicial process *by appellants*. Other than appellants' subpoena of the Handas' lender, the rest of the fairly minimal discovery was conducted by the Handas, who benefitted from their own invocation of the judicial process. *See SEB*, 2011 WL 749292, at *6 (noting that party who requests and obtains discovery is not prejudiced by getting it and taking it to arbitration to same degree as party who produces significant discovery outside stricter discovery limits of arbitration). These and the other pre-trial costs incurred by the Handas were "largely self-inflicted," *see id.* at *7, as appellants did not seek discovery from them or file dispositive motions or other pleadings requiring responses.

The circumstances here are more similar to those in cases where courts have found no waiver than to those in cases where courts have held that the movant's litigation conduct has surpassed the high hurdle required to overcome the presumption in favor of arbitration. *Compare Richmont Holdings*, 455 S.W.3d at 576 (finding no waiver where movant plaintiff filed suit twice, in different counties; filed motion to compel discovery and requesting discovery sanctions; and provided unsatisfactory explanation for delay); *In re Vesta*, 192 S.W.3d at 763 (finding no waiver where movant sent only standard requests for disclosure, noticed 4 depositions, sent one request for production, and filed motion to compel 2 years after suit filed); *EZ Pawn*, 934 S.W.2d at 90 (finding no waiver where movant participated in docket-control conference, sent requests for production

13

and interrogatories, noticed one deposition, entered into agreed order resetting trial date, and filed motion to compel 10 months after suit filed); *SEB*, 2011 WL 749292, at *6 (finding no waiver where movant defendant filed first and amended requests for disclosure, noticed 2 depositions that were ultimately not taken, participated in depositions of plaintiff that were noticed by co-defendant, filed no affirmative claims or dispositive motions, and filed motion to compel 45 months after lawsuit filed), *with Perry Homes*, 258 S.W.3d at 596–97 (finding waiver where movant plaintiff conducted extensive discovery about every aspect of case's merits, initially filed 79-page objection to arbitration, took ten depositions, filed five motions to compel and numerous requests for production, and moved for arbitration 14 months after it filed suit); *Tuscan Builders, LP v. 1437 SH6 L.L.C.*, 438 S.W.3d 717, 722–23 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (finding waiver where movant filed third-party action by bringing its subcontractors into suit, joined in third-parties' motions that prolonged discovery period and postponed trial date, filed motion to compel 12 months after suit filed and after written discovery had been completed and with trial setting less than one month away, and obviously indirectly availed itself of its subcontractor-indemnitors' discovery efforts); *PRSI Trading Co. LP v. Astra Oil Trading NV*, No. 01-10-00517-CV, 2011 WL 3820817, at *3–4 (Tex. App.—Houston [1st Dist.] Aug. 25, 2011, pet. denied) (mem. op.) (finding waiver where movant served requests for production and disclosure, served deposition notices, served letter rogatory requiring third party from overseas to travel for deposition, filed motions to compel discovery, served subpoenas and obtained document production from third parties, and filed motion to compel 11 months after suit was filed and expressly conditioned on obtaining unfavorable result on its motion for summary judgment regarding its affirmative defenses); *In re Castro*,

14

246 S.W.3d 756, 761–62 (Tex. App.—Eastland 2008, orig. proceeding) (finding waiver where movant stated at hearing that it was waiving arbitration, requested extension to file dispositive motions, served discovery requests on plaintiff and took its deposition, filed motion to compel plaintiff to respond to movant's requests for production and requests for disclosure, and filed motion to compel arbitration 41 months after suit filed).

We conclude that the totality of circumstances does not evince an intention on the part of appellants to waive their right to enforce the arbitration agreement. Additionally, the Handas have not proven that they have suffered prejudice merely by attaching evidence of their legal expenses to date, as the record shows that its pre-trial costs were largely self-inflicted, and they did not present other evidence of prejudice. *See In re Vesta*, 192 S.W.3d at 763. Accordingly, we hold that appellants did not waive their right to arbitrate their disputes with the Handas.

## CONCLUSION

The trial court erred in denying appellants' motion to compel arbitration and stay the proceedings. Accordingly, we reverse the trial court's order and render judgment granting the motion to compel arbitration and stay the proceedings.

_____

David Puryear, Justice

Before Justices Puryear, Field, and Bourland

Reversed and Rendered

Filed: November 8, 2017

15